No. 42,611

KENDALL PLUMBING, INC., *Appellant,* v. ST. PAUL MERCURY INSURANCE COMPANY, *Appellee.*

(370 P. 2d 396)

Opinion filed April 7, 1962.

*Marvin J. Martin,* of Wichita, argued the cause, and *John D. McBride,* of Wichita, was with him on the briefs for the appellant.

*William Tinker,* of Wichita, argued the cause, and *Arthur W. Skaer, Hugh P. Quinn, William Porter, Alvin D. Herrington,* and *Darrell E. Kellogg,* all of Wichita, were with him on the briefs, and *Richard T. Foster* and *W. Getto McDonald,* both of Wichita, of counsel, for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This action involves the construction of exclusion provisions of an insurance policy covering property damage liability. The district court found in favor of the insurance carrier and the insured has appealed.

The facts, all of which are stipulated or admitted by the pleadings, may be summarized as follows:

The Kendall Plumbing, Inc., entered into a contract to install a complete heating and air conditioning system in the Brown Building, Wichita, Kansas. In the prosecution of the work Kendall purchased, from two separate manufacturers, and installed a refrigerator unit and a Square D Starter. The only connection between the refrigerator unit and the Square D Starter was electrical wires.

At the time of the installation Kendall negligently failed to make the necessary pressure settings to the spring unit within the Square D Starter. About two months after the construction was completed the starter was disengaged by a Brown Building employee in the regular course of his duties and, because of insufficient spring pressure to push back the contactor within the Square D Starter, the electricity arced across and welded the contactors together. The power provided through the starter not being shut off the refrigerator unit ran without lubrication and was damaged in the sum of $2,711.73.

During all times material to this controversy Kendall had a property damage liability insurance policy with the appellee, The St. Paul Mercury Insurance Company, which was in full force and effect. It contained the following provision:

"The Company agrees to pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law or contract for damages because of damage to or destruction of property, including the loss of use thereof, caused by accident."

The policy also contained an exclusion provision which excluded, from the coverage above mentioned, damage to or destruction of—

"Any goods or products manufactured, sold, handled, or distributed by the Insured or work completed by or for the Insured out of which the accident arises."

Kendall paid for the damages to the Square D Starter and the refrigerator unit. It admits there is no liability on the part of the insurance carrier for damages to the Square D Starter but seeks to recover from such carrier the damage to the refrigerator unit. There was no other property damage caused by the defective installation of the Square D Starter. The district court found as follows:

"In this case, Kendall installed the starter negligently; that he also installed the refrigerator machine, the Worthington machine, and the faulty installation of the starter resulted in damage to the refrigeration machine. They were both separate units, but they were both installed by the plaintiff.

"It is admitted here that the damage to the starter would not be covered under the policy and that no request has been made for damages to the starter.

"It seems to me that since both units, the starter and the refrigeration machine were installed by the plaintiff under a general contract with the Brown Building, that if the exclusion applies to the starter it would also apply to the refrigeration machine."

Judgment was rendered accordingly. Kendall appeals.

The insurance carrier (hereinafter referred to as the appellee) contends that the exclusion provision excludes coverage damage to any item or part handled by Kendall (hereinafter referred to as the appellant) whether or not such item or part contributed to the injury.

Appellant contends that the exclusion provision excludes only the defective part which caused the injury but does not exclude other items handled or installed by it which were damaged by the defective item. This contention cannot be sustained. The exclusion provision definitely states that any goods or products handled or work completed by the insured are excluded. It is clear that the policy was intended to cover only damage to property or items which had not been handled by appellant. Goods or products handled by it, or work completed by it, were specifically excluded.

This court has not heretofore been called upon to place an interpretation on an exclusion provision such as the one now before us. However, similar provisions have been considered by courts of other states. In the case of *Liberty Bldg. Co. v. Royal Indem. Co.*, 177 Cal. App. 2d 583, 2 Cal. Rptr. 329, 346 P. 2d 444, the court had under consideration a similar exclusion provision where a building contractor had constructed a large number of dwelling houses and many of the houses developed defects in the outside stucco walls. We quote from the opinion at some length because it makes reference to earlier decisions from other courts which will not need further mention. In the opinion the court said:

". . . This Exclusion means that if the insured becomes liable to replace or repair any 'goods or products' or 'premises alienated' or 'work completed' after the same has caused an accident because of a defective condition, the cost of such replacement or repair is not recoverable under the policy. However, if the accident also caused damage to some *other* property or caused personal injury, the insured's liability for such damage or injury becomes a liability of the insurer under the policy, and is not excluded. For example, if a contractor builds a house and as a result of an improper mixture of the stucco, water is absorbed into the walls and the stucco cracks and falls off and a child is injured by the falling stucco, the injury to the child would not be excluded under Exclusion (f) but the replacement cost of the stucco would

be excluded. Also, if the water absorbed into the walls should reach the interior walls and injure a valuable painting hanging there, the damage to the painting would be recoverable under the policy while the damage to the walls would not. The principle here applicable is well stated in *Heyward v. American Casualty Company of Reading, Pa.*, 129 F. Supp. 4. At page 8 the court said: 'This Exclusion means that the policy will not protect the insured if he has to repair or replace some product or work which proved defective and caused an accident. The Exclusion has no reference to liability for damage *to other property or personal injury* arising out of such accident.' In accord are *Volf v. Ocean Accident & Guarantee Corp., Ltd.*, 50 Cal. 2d 373 [325 P. 2d 987]; *Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co.*, 51 Cal. 2d 558 [334 P. 2d 881]." (pp. 587, 588.)

In the case of *Hauenstein v. St. Paul-Mercury Indemnity Co.*, 242 Minn. 354, 65 N. W. 2d 122, the court had under consideration an exclusion clause similar to the one under consideration. In that case a plaster distributor sold plaster which after being applied shrunk and cracked making it necessary to remove the plaster and apply new plaster to the walls and ceilings of the building. The plaster distributor was sued and its insurer refused to defend. In the opinion the court stated:

"No one can seriously doubt that the plaster before it was used or applied to a building was a product handled, sold, and distributed by the plaintiffs and therefore fell within the exclusionary clause so that any damage from injury to the plaster itself prior to use would not be covered by the policy. Plaintiffs contend, however, that the plaster after it had been applied to the walls and ceilings of the building lost its identity as *goods and products* within the meaning of the exclusionary clause and that any damage to it in its applied condition is covered by the policy.

"1. Plaintiffs' theory is that the plaster, after its application and use by the consumers, ceased to be goods or products and, by the law of accession, became a part of the realty. We cannot agree with this ingenious theory . . ." (pp. 356, 357.)

The court refused to allow recovery under the policy for the defective plaster but did allow resulting damages to the building.

Appellant relies upon the case of *Pittsburgh Plate Glass Co. v. Fidelity & Cas. Co. of N. Y.*, 281 F. 2d 538. The case does not support its contention. In that case Pittsburgh Plate Glass Co. sold paint to a manufacturer of jalousies or outside venetian blinds. The paint was applied to louvers and other steel parts which were incorporated into the jalousies. The paint was defective and peeled and flaked. The surfaces were exposed to the elements and rusted and deteriorated. Pittsburgh was sued and it requested its insurer, under a policy containing similar provisions to the one under consideration, to defend. The insurer refused to defend, Pittsburgh

settled the suit pending against it and brought an action against the insurance carrier for indemnity. The district court had entered judgment for the insurer. The court of appeals reversed and remanded the case to the district court for further proceedings on the basis there was damage to the jalousies in addition to the defective paint. A footnote appended to the opinion reads:

"The parties agreed that under the terms of the policies the insurance did not apply to the paint itself and that there was no liability on the part of the insurance company to pay for defective paint or the costs of the replacement thereof." (footnote [2], p. 540.)

Appellant next contends that the exclusion clause is ambiguous and should therefore be subjected to the rule that ambiguities in the wording of an insurance contract are to be construed in favor of the insured. Although ambiguities in the wording of an insurance contract are to be construed in favor of the insured, this rule of construction has no application whatever to language that is clear in its meaning. Unless a contrary intention is shown, words used in an insurance contract are to be given a natural and ordinary meaning that they convey to the ordinary mind.

In the more recent case of *Smith v. Mutual Benefit Health & Acc. Ass'n*, 175 Kan. 68, 258 P. 2d 993, this court cited with approval *Knouse v. Equitable Life Ins. Co.*, 163 Kan. 213, 181 P. 2d 310. In the Knouse case we said:

". . . An insurer prepares its own contracts and it is its duty to make the meaning clear and if it fails to do so, it and not the insured, must suffer. (*Liberty Life Ins. Co. v. Guthrie*, supra.) Courts should not be astute to evade, rather than quick to perceive and diligent to apply the meaning of words manifestly intended by the parties (*Gorman v. Fidelity & Casualty Co. of New York*, 55 F. 2d 4); but where a contract is unambiguous it must be enforced according to its terms (*McKellar v. Brubaker*, 160 Kan. 451, 163 P. 2d 358). Where a contract is not ambiguous, the court may not make another contract for the parties; its function is to enforce the contract as made. (*State Highway Construction Cases*, 161 Kan. 7, 166 P. 2d 728; *Watkins v. Metropolitan Life Ins. Co.*, 156 Kan. 27, 131 P. 2d 722; *Movitz v. New York Life Ins. Co.*, 156 Kan. 285, 133 P. 2d 89; *Gorman v. Fidelity & Casualty Co. of New York*, supra.)" (p. 216.)

See, also, *Braly v. Commercial Casualty Ins. Co.*, 170 Kan. 531, 227 P. 2d 571, where, in considering established principles of contractual construction, we made the following statement:

"Another such principle appears in the opinion of *Spence v. New York Life Ins. Co.*, 154 Kan. 379, 383, 118 P. 2d 514, where it is said:

"'. . . the words of contracts of insurance are to be construed according to the meaning of the terms used, and if it is clear and unambiguous its

terms are to be taken and understood in their plain, ordinary and peculiar sense, (citing cases) . . ." (p. 383).'

"Still another is that the language of a policy of insurance, like any other contract, must, if possible, be construed in such manner as to give effect to the intention of the parties at the time it was made as expressed therein. It is to be noted, however, that in the application of this rule the test is not what the insurer intended the words of the policy to mean but what a reasonable person in the position of the insured would have understood them to mean. (See *Koehn v. Union Fire Ins. Co.*, 152 Neb. 254, 40 N. W. 2d 874, also *Hoyt v. New Hampshire Fire Ins. Co.*, 92 N. H. 242, 29 A. 2d 121, and cases there cited.)" (p. 539.)

We find nothing ambiguous in the words or phrases used in the exclusion clause and this court should not search for ambiguities where the words used in the contract have a common and well understood meaning.

What has been heretofore stated and held requires that the judgment of the trial court be affirmed and it is so ordered.