DAKOTA BLOCK COMPANY, Appellant v.

WESTERN CASUALTY & SURETY COMPANY, Respondent

(132 N.W.2d 826)

(File No. 10150.  Opinion filed February 4, 1965)

Rehearing denied April 27, 1965

**Bangs, McCullen, Butler & Foye,** Rapid City, for plaintiff and appellant.

**Hanley, Costello & Porter,** Rapid City, for defendant and respondent.

HOMEYER, J. (on reassignment). This is an action for a declaratory judgment to determine coverage under a Comprehensive General-Automobile Liability Policy issued by defendant insurance company to plaintiff. The court below found no coverage and dismissed the action. Plaintiff appeals.

Under Coverage C, Property Damage Liability-Except Automobile, defendant agreed "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damage because of injury to or destruction of property, including the loss of use thereof, caused by accident." Under Exclusions there is a provision that the policy does not apply (under Coverage C) to injury or destruction of "any goods, products or containers thereof manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises."

Defendant asserted (1) the damage was not caused by accident, and (2) if caused by accident, it was within the provisions of the exclusionary clause quoted above. The trial court found the damage was caused by accident, but nevertheless denied recovery by holding the damage sustained was excluded from coverage.

It appears from the evidence that plaintiff is engaged in the business of manufacturing and selling haydite and concrete block and other items related thereto. In December 1960 it began producing a new product known as Glazex block. The finished product consisted of an ordinary haydite block to which a colored polyester resin mixed with aggregate had been baked on an outside surface. The block was so designed that a building wall could be constructed in one step with a completely finished interior or exterior surface.

Plaintiff supplied and sold to a masonry subcontractor about 15,000 square feet of Glazex block which was used in the construction of the Douglas school building at Ellsworth Air Force Base. The block was used as an exterior wainscot under the window walls in classroom areas and on the top twenty feet of all sides of the gymnasium. Where necessary, vent stacks, electrical conduit, and insulation were placed in the core of the blocks forming the completed walls. The building plans specified a light blue color on the Glazex surface.

When the masonry work was about 90% completed, the project architect made complaint concerning the appearance of the exterior walls of the gymnasium which had begun to fade and discolor and had taken on a mottled appearance. Some units had turned to a shade of green and others had changed to a brownish-gray. In addition there was surface cracking in the Glazex facing on some of the block. There was no uniformity to the color change and it was most noticeable in the gymnasium section, but also appeared in other places where Glazex block had been used. The change took place when the block was exposed to the elements; however, it was a gradual process and the exact cause of the fading and discoloration was never determined.

Defendant insurance company was notified of the condition of the walls and the complaint, and it retained an adjustor to investigate; however it neither confirmed nor denied coverage for the loss. No progress was made towards settlement and the owners originally requested the walls be torn down. After about three months of negotiation and numerous conferences with contractors, architect and owners, plaintiff persuaded them to agree to a surface coating to cover the block and mortar joints comprising the walls. A commercial product known as "Ev-Rock" was sprayed on the walls and the final result was a uniformly solid colored wall in a darker blue. The work was performed by another company for which plaintiff paid $9,263.00.

Counsel for plaintiff testified when the agreement in settlement was finally executed by plaintiff, the two prime contractors, the architect, and the school district, that they (school district

and architect) insisted that "the agreement be signed on that date, and if it wasn't signed that any—all settlement negotiations were off and that they were going to insist on completely taking down the walls." Testimony in the record is without contradiction that if the walls had been torn down and the block replaced, the cost of labor on the gymnasium alone would have exceeded $30,000.00 and this did not include cost of material and labor on the mechanical and electrical installations inside the walls.

In its complaint, plaintiff alleged the change in color and appearance of the block caused "damage and injury to the value of the school building as a whole", and that such change in color damaged and injured the structure of which they are a part. On this appeal it vigorously maintains the evidence allows no conclusion except that the value of the building as a whole was diminished as the result of the faded, discolored, and cracked Glazex surfacing, and the damage cannot be confined to plaintiff's product so as to fall within the exclusion contained in the policy as contended by defendant. Plaintiff proposed Finding No. 10 as follows: "As a result of the fading and surface cracking of the Glazex block, the school building of which they were a part was damaged in that the value of the building was greatly diminished." The trial court rejected this finding as immaterial and affirmatively found "No damage, injury, or diminution in value was occasioned to any property other than the said Glazex Blocks". In so finding, we are of the opinion the court erred and we reverse the judgment.

We will briefly refer to cases decided in other courts involving the question presented. An exclusionary clause almost identical in form was before the Minnesota court in Hauenstein v. Saint Paul-Mercury Indem. Co., 242 Minn. 354, 65 N.W.2d 122. Some acoustical plaster had cracked, was removed and replaced, and a determination was sought of an insurer's liability for damages. The court reasoned: "Although the injury to the walls and ceilings can be rectified by removal of the defective plaster, nevertheless, the presence of the defective plaster on the walls and ceilings reduced the value of the building and con-

stituted property damage. The measure of damages is the diminution in the market value of the building, or the cost of removing the defective plaster and restoring the building to its former condition plus any loss from deprival of use, whichever is the lesser."

In Volf v. Ocean Accident and Guarantee Corporation, 50 Cal.2d 373, 325 P.2d 987, stucco purchased by a general contractor and used in building houses cracked and the contractor remedied the condition by putting a new stucco exterior over the old at additional cost. In a suit to recover the extra cost, a divided court denied recovery relying on two provisions of an exclusionary clause, one of which was similar to that in the instant case; the other, an exclusion of "injury to * * * property in the care, custody or control of the insured," which is not applicable here. Both the majority and minority opinion cite the Hauenstein case as authority. The majority reasoned the case is distinguishable because in Hauenstein the plaster was removed and replaced. Justice Carter in his dissent said: "It is an inconsequential distinction that the plaster had to be removed in the Hauenstein case but the damaged stucco in this case was merely covered over. The crux is that because of the damage the building's market value decreased. * * * The court held a proper measure of damages to be the cost of removing the defective plaster and restoring the building to its former condition. I interpret this to mean restoration with proper plastering."

Shortly after its decision in Volf, supra, the California court again had substantially the same question before it in Geddes & Smith, Inc. v. Saint Paul-Mercury Indem. Co., 51 Cal.2d 558, 334 P.2d 881. A building contractor sued for damages resulting from defective doors supplied by a manufacturer. Recovery was allowed under the Hauenstein rule and the majority opinion distinguishes this case from the Volf case because the defective product (doors) was removed and replaced the same as in Hauenstein where defective plaster was removed and replaced. Justice Carter in a special concurrence reaffirmed his minority position in the Volf case saying the Hauenstein and Volf cases

were not distinguishable and the conclusions in the two California cases were inconsistent.

In Pittsburgh Plate Glass Company v. Fidelity and Casualty Company of New York, 3 Cir., 281 F.2d 538, a manufacturer of paint sold its product to a manufacturer of jalousies (venetian blinds); the paint flaked and peeled off and the manufacturer had to remove the venetian blinds, return them to its plant, soak them in a chemical bath and remove the paint, etc. and then repaint and reinstall the jalousies. In holding the complaint stated a cause of action for property damage to a completed product, the court referred with approval to the Hauenstein and Geddes-Smith cases. A somewhat similar factual situation and result appears in Bundy Tubing Company v. Royal Indemnity Company, 6 Cir., 298 F.2d 151, where the manufacturer of small thin-walled steel tubing sued its products liability insurer for damages resulting from use of its defective product in heating systems in basementless houses. The tubing was placed in concrete floors which had to be torn up in order to replace the defective tubing. Recovery was allowed for the cost of removing the defective tubing and installing new tubing, but the value of the defective tubing or the cost of the new tubing were not included as part of the damage.

Two other cases, Liberty Building Company v. Royal Indemnity Company, 177 Cal.App.2d 783, 2 Cal.Rptr. 329, 346 P.2d 444 and Kendall Plumbing, Inc. v. St. Paul Mercury Insurance Company, 189 Kan. 528, 370 P.2d 396, have involved application of similar policy provisions to variant facts with reasoning applied that resulted in coverage being denied the policyholders.

■ We do not align ourselves with or reject the reasoning employed in any of the cases discussed or mentioned, except insofar as the element of property damage is concerned. We are satisfied that common sense dictates there was substantial property damage to the entire school building when the exterior walls presented a faded, discolored, mottled and unsightly appearance in contrast to a uniform and eye-pleasing manifestation

envisioned by the original plans. To say the damage in such instance can be confined to the blocks as distinct from the school building, we feel, is unrealistic and loses sight of the forest because of the trees. Although plaintiff offered no direct evidence that the value of the building was diminished by reason of the defective blocks, in our opinion, the fact of the owner's dissatisfaction, the architect's complaint, the protracted negotiations to settle differences, and the uncontradicted testimony of costs of reconstruction lead to the inevitable conclusion of a damaged structure caused by plaintiff's defective product. This places the loss within the policy coverage.

In our opinion the language used in the exclusionary, clause by which defendant seeks to escape from liability under its insuring agreement is not so clear as to preclude an allowance for damage of the nature here sustained. In the relatively short time span of the cases (cited supra) seeking a determination of its meaning, courts, and judges within the same court, have expressed divergent opinions on its clarity. We have said where provisions of an insurance contract are fairly susceptible of different interpretations, the interpretation most favorable to the insured should be adopted. Black Hills Kennel Club, Inc. v. Fireman's Fund Indemnity Co., 77 S.D. 503, 94 N.W.2d 90.

The trial court did not reach the question of the measure of damages. Consequently, this matter is not presented and we express no opinion thereon.

Judgment reversed.

RENTTO, and BIEGELMEIER, JJ., concur.

ROBERTS, P. J., dissents.

HANSON, J., dissents.

HANSON, J., (dissenting). I am unable to concur.

Although the majority may have arrived at an equitable result it is not supported by any evidence or sustained by any authority. This is not an equitable proceeding and there are numerous recent well considered opinions from other jurisdic-

tions construing identical contractual provisions to similar factual situations and each would deny coverage of plaintiff's claim.

It is evident from the coverage and exclusionary clauses of the policy that it was intended to protect the named insured against liability for property damaged other than the insured's own goods and products. In the present case the insured's Glazex coated blocks were used in certain exterior wall areas of the Douglas School building. After installation some of the paint on the blocks faded or became mottled in appearance. The defect was confined solely to the painted surface of the blocks. It was corrected by the application of another paint coating called Ev-Rock. None of the original blocks were removed or replaced and the condition complained of was rectified to the apparent satisfaction of the U. S. Government's architects by the application of the Ev-Rock paint to the Glazex block area. There is no evidence the school building was otherwise affected, damaged, injured or reduced in value by reason of the temporarily discolored condition of the blocks. In this respect the trial court found:

> "The pertinent claim made by the said School District was limited solely to the discoloration of the said Glazex Blocks and did not include, nor was claim made for, structural damage or diminution in value, or other injury or damage to or of the involved building or property other than the said block itself. The condition complained of was fully and satisfactorily remedied and corrected by a process and work applied to and performed upon, and solely upon, the Plaintiff's product, namely, the Glazex Blocks. No damage, injury, or diminution in value was occasioned to any property other than the said Glazex Blocks."

Under the circumstances the cost of applying Ev-Rock coating was excluded from coverage as the claim arose out of, and was confined to, an injury of the insured's own product. This is the consensus of all cases on the subject. In Hauenstein v. Saint Paul-Mercury Indem. Co., 1954, 242 Minn. 354, 65 N.W.2d 122, the in-

sured plaintiffs were distributors of a new type of acoustical plaster. When applied to a hospital it shrunk, cracked, and had to be removed and replaced. In seeking recovery plaintiffs contended that after the plaster was applied it ceased to be goods or products and by the law of accession became an integral part of the realty. The Minnesota court rejected this theory and said the exclusionary clause was "applicable to plaster as a product handled by the plaintiffs without any limitation as to its changed condition by its regular and ordinary use." Nevertheless, apparently because the plaster had to be removed the court concluded the loss was covered and the measure of damages was "the diminution in the market value of the building, or the cost of removing the defective plaster and restoring the building to its former condition plus any loss from deprival of use, whichever is the lesser." The Hauenstein case was followed by the California court in Geddes & Smith, Inc. v. Saint Paul-Mercury Indem. Co., 1959, 51 Cal.2d 558, 334 P.2d 881, which involved 760 defective aluminum doors, doorjambs, and attached hardware which had to be removed and replaced by the insured building contractor. The court allowed recovery for the cost of removing the doors and loss of use of the homes. Other costs of handling the defective doors, their replacement and loss of profits and goodwill were not allowed. The Hauenstein case was likewise cited and followed in Bundy Tubing Company v. Royal Indemnity Company, 1962, 298 F.2d 151, wherein defective steel tubing had been installed in the concrete floors of basementless houses to conduct hot water for radiant heating. The insurer conceded it was liable for damage to household furnishings covered by the leakage of water from the defective tubing. However, the principal damage was for the removal and replacement of concrete flooring in which the tubing was embedded. The court held the value of the defective tubing or the cost of new tubing could not be included as part of the damage, but the cost of removing defective tubing and the cost of installing new tubing was recoverable. A similar result was reached in the case of the Pittsburgh Plate Glass Co. v. Fidelity & Cas. Co. of N. Y., 1960, 3 Cir., 281 F.2d 538, in which the insured plaintiff was a manufacturer of paint used to paint the louvers and other steel parts of outside window jalousies. After installation on

homes the paint peeled and flaked off in patches. The bare surfaces rusted and deteriorated. As a result the jalousies had to be removed, returned to the plant, soaked in a chemical bath, brushed, repaired, rewelded, treated with a rust inhibitor, repainted and reinstalled.

Recovery was not allowed by the California court in Volf v. Ocean Accident and Guarantee Corporation, 1958, 50 Cal.2d 373, 325 P.2d 987, where the loss was occasioned by cracks occurring in the exterior stucco of a new house. The condition was remedied by applying a new stucco coat over the old. The Hauenstein case was distinguished on the grounds that it was not necessary to remove the defective stucco and there was no evidence of any injury to the house itself by reason of the original defective stucco coat. The same result was reached in Liberty Building Co. v. Royal Indemnity Company, 1959, 177 Cal.App.2d 783, 2 Cal.Rptr. 329, 346 P.2d 444, where the plaintiff contractor constructed and sold a large number of dwellings. After completion the outer stucco covering became cracked, discolored, and flaked away. The defects were caused by an improper mixture which allowed water absorption into the stucco. Because the stucco was alleged to have been damaged by an internal defect rather than an external cause it was the " 'goods or product * * * or work completed * * * out of which the accident' arose. Hence there was no liability under the policy." The court said the exclusionary clause in question "means that if the insured becomes liable to replace or repair any 'goods or products' * * * after the same has caused an accident because of a defective condition, the cost of such replacement or repair is not recoverable under the policy. However, if the accident also caused damage to some **other** property or caused personal injury, the insured's liability for such damage or injury becomes a liability of the insurer under the policy, and is not excluded." Likewise, coverage was denied in Kendall Plumbing, Inc. v. St. Paul Mercury Insurance Company, 1962, 189 Kan. 528, 370 P. 2d 396, for damages to a refrigeration unit installed by the insured and damaged by reason of a defective starter which also had been installed by the insured.

According to such authority, plaintiff's claim should be denied coverage as it was not necessary to remove or replace any block to correct the discolorization and there is no evidence of injury to any other property or to any other part of the school building, or of any diminution in its value, or of any loss of its use. The damages were confined and corrective measures applied to the insured's own product and nothing else.

The court concludes that plaintiff's loss is covered by the policy. The opinion, however, fails to indicate what the measure of damages shall be on retrial. This question will be a matter of concern to the trial court as plaintiff's claim is for the cost of repairing his own product. Such claim is clearly and unequivocally excluded from coverage by the plain and unambiguous language of the exclusionary clause. That claim is the one settled by the insured. Having no interest in the school building it would seem that plaintiff has no standing to ask for or receive damages for its diminution in value if any could possibly be shown on retrial.