**HOME INDEMNITY COMPANY,**
**Appellant,**

v.

**Lee Alan MILLER and Lois Magnuson**
**Miller, Appellees.**

**No. 19106.**

United States Court of Appeals
Eighth Circuit.

Aug. 16, 1968.

---

Ralph C. Kleinschmidt, of Evans & Dixon, St. Louis, Mo., for appellant.

Byron A. Roche, of Murphy, Roche & Schlapprizzi, St. Louis, Mo., for appellees.

Before MATTHES and HEANEY, Circuit Judges, and REGISTER, Chief District Judge.

REGISTER, Chief District Judge.

This case requires the interpretation and construction of certain provisions of a comprehensive general liability policy of insurance.

The parties to this appeal have stipulated, pursuant to the provisions of Rule 76 of the Federal Rules of Civil Procedure and Rule 10(f) of the rules of this Court, that the following statement of the case shall constitute the facts giving rise to the issues presented herein:

"Plaintiffs, citizens and residents of the State of Missouri, obtained judgment against Lindgate Developers, Inc., a Missouri corporation, in the Circuit Court of St. Louis County, Missouri, in the sum of $17,000. That judgment was partially satisfied to the extent of $3,-700, and to recover the balance, or $13,-300, execution by way of garnishment was sought against Home Indemnity Company, a New York corporation with its principal place of business in that state. The garnishee removed the case to the (federal) district court, which had jurisdiction because of the amount involved and the diversity of citizenship. Issues were developed by the usual pleadings in garnishment cases, and the cause was tried to the court, resulting in a judgment in favor of plaintiffs from which garnishee appealed.

"Lindgate Developers, Inc. (hereinafter referred to as Lindgate) was in the business of subdividing property and constructing and selling homes thereon. It would purchase a tract of land, lay out and construct necessary streets and sewers, build houses, and sell the same as a completed unit to various purchasers. On August 3, 1961, the plaintiffs purchased, received title to, and took possession of a completed residence home. During the summer of 1962, the outside walls and foundation began to crack. This was reported by plaintiffs to Lindgate, but the developer did nothing to repair the situation or arrest the deterioration. In May 1964, plaintiffs retained a civil engineer to inspect the premises and report the cause of the damage. The inspection revealed that the damage was caused by Lindgate's improper placement of footings and improper installation of the roof. Plaintiffs thereupon filed suit against Lindgate.

"At all pertinent times, including the date the house was sold to plaintiffs and the date damage became evident, there was in force and effect a policy of comprehensive general liability insurance

issued to Lindgate by garnishee. During the pendency of the state court litigation, but before judgment was taken, the officers of Lindgate were advised by their attorneys that there was a possibility that the 'operations' clause of the policy might provide coverage for the claim and cause of action of plaintiffs, and the attorneys immediately notified garnishee's agent of the pendency of the claim and made demand upon garnishee to take over the defense of plaintiffs' suit. Garnishee declined and plaintiffs proceeded to judgment as above stated.

"The following provisions of the policy are decisive of the issues involved:

"Insuring Agreements.

'I. Coverage A—Bodily Injury Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident.

Coverage B—Property Damage Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.'

'Exclusions.

'This policy does not apply:

'(h) under coverage B, to injury to or destruction of * * * (4) any goods, products or containers thereof manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises;'

'Conditions.

3. Definitions:

(c) Products Hazard. The term 'products hazard' means

(1) goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in division (a) of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;

(2) operations, including any act or omission in connection with operation performed by or on behalf of the named insured on the premises or elsewhere and whether or not goods or products are involved in such operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be 'operations' within the meaning of this paragraph: (a) pick-up or delivery except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in division (a) of the declarations specifically includes completed operations.' "

In brief, the stipulated facts establish that the damage sustained by the plaintiffs (constituting the basis for their cause of action, and coverage for which

is claimed under the policy) consisted of damage to a residence home which had been built, completed and sold to them by the insured, Lindgate Developers, Inc. Prior to such damage, the plaintiffs had acquired title to and taken possession of the completed residence. The policy was in full force and effect at the time of the sale to plaintiffs, and also at the date damage became evident. The damage was the direct result of improper construction by the insured, and hence was damage occurring to the work product of the insured, by reason of its own internal defectiveness.

In order to more clearly and understandably pinpoint the precise issue before us, it will be helpful to recite some of the pertinent matters concerning which the parties are in agreement. In substance, the policy consists of the Insuring Agreements, Exclusions and Conditions. The parties agree that the provisions of Insuring Agreements, Coverage A and Coverage B, are clear and unambiguous, and are sufficiently broad, in the absence of any limiting provisions or exclusions, to cover the pleaded claim for damages; that the provisions of Exclusion (h) (4), standing alone, are clear and unambiguous, and that the plaintiffs' claim for damages is such as to be embraced within such expressly stated exclusions; that the provisions of Conditions, Definitions, 3(c) Products Hazard (1) and (2), standing alone, are clear and unambiguous; and that Exclusion (h) (4) is not ambiguous when considered in connection with Condition 3(c) (1) (the so-called goods or product clause). Appellees contend, however, that Exclusion (h) (4) is ambiguous when considered in connection with 3(c) (2) (the operations clause), and that, under Missouri law, such ambiguity must be resolved in favor of coverage for the insured. The parties agree that the sole question raised on this appeal is the validity and application of Exclusion (h) (4)—and that, if such exclusion applies, there is no coverage and the judgment of the trial court must be reversed, but, conversely, if the exclusion does not

apply, coverage exists and the judgment must be affirmed.

It is undisputed that the policy here involved is a Missouri contract, and that, in the interpretation and construction of the policy, Missouri law is applicable and controlling. The rules of interpretation and construction by which insurance contracts are measured in that state are definite and well established. In Giokaris v. Kincaid, 331 S.W.2d 633, at page 636, 86 A.L.R.2d 925 (Mo.1960), the Supreme Court of Missouri said:

"We have said the rules for construing insurance policies 'are well settled. The policy is a contract. Plain and unambiguous language must be given its plain meaning. The contract should be construed as a whole; but, in so far as open to different constructions, that most favorable to the insured must be adopted. * * * However, * * * the rule "does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists." ' Wendorff v. Missouri State Life Insurance Co., 318 Mo. 363, 1 S.W.2d 99, 101[4, 5], 57 A.L.R. 615 (omitting citations). Central Surety & Ins. Corp. v. New Amsterdam Cas. Co., 359 Mo. 430, 222 S. W.2d 76, after quoting (78[1]) the foregoing from the *Wendorff* case, states (80[6]): 'Where possible, it is our duty to give every clause of the policy some meaning.' These cases involved policy provisions excepting liability. See Davis v. Mutual Life Ins. Co., 234 Mo.App. 748, 119 S.W.2d 488, 493[4], quoting Williams v. Union Central Life Ins. Co., 291 U.S. 170, 180, 54 S.Ct. 348, 78 L.Ed. 711, 92 A. L.R. 693, 700."

See also: Central Surety & Insurance Corporation v. New Amsterdam Casualty Co. et al., 359 Mo. 430, 222 S.W.2d 76, 80 (1949); Massachusetts Bonding and Insurance Company v. Julius Seidel Lumber Co., 279 F.2d 861, 865–866 (8 Cir. 1960); Looney v. Allstate Insurance Company, 392 F.2d 401, 405 (8 Cir.

1968); and Vol. 17A C.J.S. Contracts § 297, p. 107.

■ In examining this policy, it must be considered and construed as a whole, and, if possible, "it is our duty to give every clause of the policy some meaning." *Giokaris*, supra.

■ By Insuring Agreement I, the Appellant agreed to pay on behalf of its insured, all sums which the insured became legally obligated to pay as damages because of bodily injury (Coverage A) or because of injury to or destruction of property (Coverage B). By Condition 3, Definition (c) (2), this obligation was defined to include insured's liability for "operations"—"including any act or omission in connection with operations performed by or on behalf of the named insured on the premises or elsewhere and whether or not goods or products are involved in such operations, if the accident occurs ˙after such operations have been completed or abandoned and occurs away from the premises owned, rented or controlled by the named insured; * * *." Under such a broad insuring agreement, and in the absence of pertinent limiting, modifying or exclusionary provisions, the damage here involved would have been covered, since the damage occurred to plaintiffs' home after the insured's work had been completed and after possession thereof had been conveyed to plaintiffs.

However, the policy expressly provides that it is "subject to the limits of liability, *exclusions,* conditions and other terms of this policy." (Emphasis added.) Under "Exclusions," it is provided that "This policy does not apply: * * * (h) (4)," under Coverage B, to "any goods, products or containers thereof manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises." Plaintiffs concede that the damage involved is embraced within the expressed exclusionary provisions, but contend that such provisions should be compared to, or equated with, the

provisions of 3(c) (2) and, if this is done, an ambiguity is apparent.

We are not persuaded by this argument. Policy Condition 3(c) defines the term "Products Hazard"—this definition consists of two parts, (a) and (b), relating respectively to "products" and "operations." Whether 3(c) (2) is considered to be "additional 'operations' coverage" as contended by Appellees, or "solely a definition of a part of the total coverage granted by Insuring Agreement B" for use in restricting or removing a part of the total coverage, as contended by Appellant, it is clearly related to and affects solely the insurance coverage and liability provided by the policy. As that insurance coverage and liability, regardless of their extent, and however the broad coverage provisions are affected by 3(c) (2), are expressly subject to the exclusions, and as such exclusions expressly and clearly state that the policy does not apply to damage to property under stated circumstances which concededly here exist, there is and can be no ambiguity, and the policy is not applicable.

Pursuing their argument, Appellees contend that they applied for and paid an extra premium for the "additional 'operations' coverage" provided by 3(c) (2), that the basis of their cause of action fulfills all of the conditions therein specified, and that if effect is given to exclusion (h) (4), they received nothing for the consideration paid, as the coverage "created" by the operations clause would be completely voided. The fallacy of this contention can readily be demonstrated. In effect (h) (4) excluded liability only on account of products manufactured and sold, or premises alienated, or work completed, by the insured. It does not exclude liability for damage to property which was not sold by the insured, or work completed by others than the insured. Coverage remained to protect the insured's liability for bodily injuries caused by his defective workmanship and for damage which that workmanship might cause to property other than that which was the insured's own

work product. We are satisfied that the liability of the insured, under the factual circumstances herein, arose from the inherent defects of the insured's "product"—the completed home—and not from its "operations," even though the activities which were necessary and incident to the construction and completion of such "product" might be considered to be within the meaning of the term "operations." If Appellees' contention were carried to its logical conclusion, Exclusion (h) (4) would have to be entirely disregarded with respect to any claim arising out of the insured's "operations."

Exclusionary clause (h) (4) is apparently a usual provision of standard insurance policies, and the purpose thereof has been stated repeatedly by the Courts. This Court, in St. Paul Fire and Marine Insurance Company v. Northern Grain Company et al., 365 F. 2d 361 (8 Cir. 1966), had under consideration a policy which, under "Conditions" defined the term "products hazard," and which excluded coverage "to injury to or destruction of * * * (3) any goods, products or containers thereof manufactured, sold, handled or distributed by the Insured, * * * out of which the occurrence or accident arises * * *." Judge Matthes, speaking for the Court, (p. 368) stated:

"Considered in its proper perspective, the function of the exclusionary clause denying coverage of damages for 'injury to or destruction of * * * any goods, products or containers thereof manufactured, sold, handled or distributed by the *Insured* * * *' is clear. Such a provision denies coverage to an insured for damages occasioned to his own goods or work product by reason of its internal defectiveness. The exclusionary clause, however, has no reference to damage to property other than the insured's goods or products or other accidental loss resulting from the defective condition of the insured's work product. (Citations.)"

Vobill Homes, Inc. v. Hartford Accident and Indemnity Company, 179 So.2d 496 (La.App.1965), is a case in which the factual situation is virtually identical to that before us, as are the insurance policy provisions. In that case Vobill constructed and sold a home to Birge; after Birge took delivery and possession, defects in the structure occurred and became evident. Vobill was insured by a policy issued by the defendant Hartford, which policy contained the identical exclusionary provisions which are before us in this case. Birge sued Vobill for damages on account of the defective construction of the home, and Vobill joined Hartford as a third-party defendant. Hartford defended upon the proposition that, as the damage occurred to the insured's own work product, it was excluded, as the policy did not apply. The Court stated:

"The principal demand by Virge against Vobill seeks recovery for defects in a house constructed by Vobill for Birge. Pertinently, these defects (such as a defective or insufficient slab foundation) are alleged to have resulted from negligent acts or omissions on the part of Vobill when it constructed the home. These defects became apparent after Vobill had turned over the house to Birge.

*    *    *    *    *

We agree with Hartford that the exclusion clause in question unambiguously excludes property damage 'to * * * goods, [or] products * *, manufactured, [or] sold * * *, or work completed by or for the named insured,'—such as the injury to the house 'manufactured' or 'completed' by Vobill, the present insured. (This is subject to the qualification, which has no application here, that excluded by the clause are only injuries to a work-product 'out of which the accident arises.')

For this reason, it has uniformly been held that a liability policy with an exclusion clause such as the present does not insure any obligation of the policyholder to repair or replace

his own defective work or defective product. (Citations.)"

See also: Volf v. Ocean Accident and Guarantee Corporation, 50 Cal.2d 373, 325 P.2d 987 (1958); Kendall Plumbing, Inc. v. St. Paul Mercury Insurance Company, 189 Kan. 528, 370 P.2d 396 (1962); and S. L. Rowland Construction Co. v. St. Paul Fire and Marine Ins. Co., 434 P.2d 725 (Wash.1967).

The language used in this exclusion clause is clear and simple—there is nothing ambiguous in the words or phrases used therein. They have a common and well-understood meaning. When viewed and considered in the light of the entire contract, and as a part thereof, it is clear that such clause excludes from liability thereunder any claim for damages arising from internal defectiveness of the insured's own work product. We have found no cases (and counsel have cited no authority) holding that an insurance liability policy containing provisions similar to those in the policy here involved covers a claim for damages arising from such a fact basis.

The judgment appealed from is

Reversed.