**PITTSBURGH BRIDGE AND IRON WORKS, Appellant,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY.**

No. 19049.

United States Court of Appeals, Third Circuit.

Argued Jan. 11, 1971.

Decided July 6, 1971.

As Amended Aug. 3, 1971.

Frederick J. Francis, Meyer, Unkovic & Scott (William G. Boyle, Pittsburgh, Pa., on the brief, for appellant.

Frederick N. Egler, Egler, McGregor & Reinstadtler (Andrew N. Weil, Pittsburgh, Pa., on the brief), for appellee.

Before SEITZ and VAN DUSEN, Circuit Judges, and MASTERSON, District Judge.

OPINION OF THE COURT

MASTERSON, District Judge.

This is an action for contractual damages brought by Pittsburgh Bridge & Iron Works (hereinafter referred to as "PBI") against Liberty Mutual Insurance Company (hereinafter referred to as "Liberty Mutual") for Liberty Mutual's failure to defend a property damage claim made against PBI.

In 1963, Colorado Fuel & Iron Corporation (hereinafter referred to as "Colorado") entered into a contract with Ft. Brannaum, Inc. (hereinafter referred to as "Brannaum"), whereby Colorado agreed to erect a tramway system from materials furnished by Colorado. Brannaum agreed to pour the concrete and anchor the steel for the foundation. Colorado subcontracted the erection of the tramway system to PBI under a purchase order dated February 28, 1963. Colorado further subcontracted the fab-

rication of the towers and the saddles[1] for the tramway system to PBI on April 10, 1963. PBI proceeded to erect the tramway and installed in the tramway a saddle incorrectly fabricated from the plans and specifications submitted to PBI by Colorado. The tramway operated from 1963 to 1965 at which time it was discovered that two of the outer strands of the main cable supporting the tramway car had broken due to the defective fabrication of the saddle. The cable had been manufactured and supplied by Colorado.

At all times relevant to this cause of action, PBI was an insured of Liberty Mutual under a comprehensive general liability policy in which the insurer promised:

> To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.

The policy further provided that the insured would:

> Defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent * * *

The insurance policy included "products hazard" insurance, being partially defined in the policy as follows:

> The term "product hazard" means operations, if the accident occurs after such operations have been completed or abandoned and occurs away from the premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement.

In the exclusion section of the policy under exclusion (h) (4), it was recited that the policy does not apply:

> To injury to or destruction of * * * any goods, products or containers thereof manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises.

PBI notified Liberty Mutual of Brannaum's claim and Liberty caused an investigation to be made. As the result of the investigation, Liberty Mutual was notified by letter from Frederick L. Walker, an engineer, that the broken strands were caused by the defective saddle. Although PBI requested Liberty Mutual to assume defense of the claim, Liberty Mutual denied coverage of the claim under the policy.

On June 10, 1966, Brannaum filed a complaint in the United States District Court for the Eastern District of Kentucky against Colorado alleging damages resulting *inter alia* from the inoperation of the tramway and on June 15, 1966, Colorado filed a third party complaint against PBI. Plaintiff secured the representation of the law firm of Meyer, Unkovic & Scott in Pittsburgh, Pennsylvania and the law firm of Harbison, Kessinger, Lisle & Bush in Lexington, Kentucky to represent its interest in defending the claim made against it.

From September 27, 1966 to January 19, 1968, PBI's attorneys wrote Liberty Mutual nine letters advising Liberty Mutual of the status of the action and requesting Liberty Mutual to assume the defense. On January 18, 1968, a tentative settlement was reached between the parties which provided in part that PBI agreed to pay $10,000.00 to Colorado and to assume the cost of removing the tramway. Liberty Mutual was immediately notified of this proposed

---

1. The tramway system was supported by a series of steel towers. On the top of each tower there was a "saddle," which is the term used for the metal device upon which the tramway cables rest.

settlement by letter dated January 19, 1968.

On February 21, 1968, the parties formally settled pursuant to the aforementioned tentative settlement. The agreed judgment signed by the Court recited in part:

> Defendant and Third Party Plaintiff, Colorado Fuel & Iron Corporation, shall recover on its Third Party Complaint from Third Party Defendant, Pittsburgh Bridge & Iron Works, based upon its claim that said Third Party Defendant negligently furnished track saddles of improper radius, which saddles caused physical damage to Plaintiff's Ft. Brannaum, Inc. track cables which were manufactured and furnished by Defendant and Third Party Plaintiff, thus rendering the said Plaintiff's tramway unserviceable.

In defending the action, and satisfying the judgment, PBI incurred reasonable and necessary expenses totaling $34,420.14 which represent the damages claimed in this action.

The present law suit to recover these expenses was tried non-jury before the District Court and on April 21, 1970, the Court rendered an opinion ordering that judgment be entered against PBI on the ground that exclusion (h) (4) was applicable and that, therefore, Liberty Mutual was under no obligation to defend PBI's interest in the action in Kentucky.

■ As framed by the parties and by the Court below, the issue we must decide on this appeal is whether the above-quoted exclusion (h) (4) applies to the facts of this case.[2]

The applicability of exclusion (h) (4), or exclusions substantially identical to it, has generally arisen in two kinds of factual situations, to wit:

(1) Where X supplies a part to Y who constructs an entity from X's part and from other parts and X's part proves defective causing damage to the entity;

(2) Where X himself constructs an entity from his own parts or others' parts and

(a) a part of the entity is defective and causes damages to someone or something other than the entity, or

(b) a part of the entity is defective and causes damages to the entity itself.

In situations (1) and 2(a) it is clear, and the cases are uniform, that the (h) (4) exclusion is inapplicable, and that there is coverage and the insurer must defend any suit brought by the injured party against X. Hauenstein v. St. Paul Mercury Indemnity Co., 242 Minn. 354, 65 N.W.2d 122 (1954); Dakota Block Co. v. Western Casualty & Surety Co., 81 S.D. 213, 132 N.W.2d 826; Pittsburgh Plate Glass Co. v. Fidelity & Casualty Co., 281 F.2d 538 (3d Cir. 1960). In the situation presented in (2) (b), which is the one before this Court, the cases have not uniformly resolved the issue.

■ The weight of authority holds that the exclusion is applicable and that there is no coverage. Liberty Building Co. v. Royal Indemnity, Co., 177 Cal.

---

2. As the Court views it, the Court is applying Pennsylvania substantive law in this case. Under Pennsylvania conflict of laws rules the issue of interpretation of insurance contracts, which is the issue here, is governed by the laws of the state where the policy is "issued and delivered." Varas v. Crown Life Ins. Co., 204 Pa.Super. 176, 203 A.2d 505 (1964); Eastcoast Equip. Co. v. Maryland Casualty Co., 38 Pa.Dist. & Co. R.2d 499 (1965), aff'd 207 Pa.Super. 388, 218 A.2d 91 (1966). Although the record in this case does not make it completely clear what state is the state of "issuance and delivery," it nevertheless would appear to be Pennsylvania. Indeed, the parties have argued before this Court on the basis that Pennsylvania law applies. In any event, no issue has been raised that the outcome of this case would differ whether the Court applied Pennsylvania law or the law of Massachusetts, the other state whose law could apply in this case. No cases directly controlling on the issue presented here have been cited to the Court, and the Court's own research has revealed none.

App.2d 583, 2 Cal.Rptr. 329 (1960); Volf v. Ocean Accident & Guaranty Corp., 50 Cal.2d 373, 325 P.2d 987 (1953); Kendall Plumbing, Inc. v. St. Paul Mercury Ins. Co., 189 Kan. 528, 370 P.2d 396 (1962); Vobill Homes Inc. v. Hartford Accident & Indemnity Co., 179 So.2d 496 (C.A.La.App.1965); McGann v. Hobbs Lumber Co., 150 W.Va. 364, 145 S.E.2d 476 (1965); Home Indemnity Co. v. Miller, 399 F.2d 78 (8th Cir. 1968); Consumers Const. Co. v. American Motorist Ins. Co., 254 N.E.2d 265 (C.A.Ill.App.1969); Bryan Const. Co. v. Employer's Surplus Lines Ins. Co., 110 N.J.Super. 181, 264 A.2d 752 (1970). These cases hold that the exclusion, when read in light of the entire policy, is clear and unambiguous and must be given its plain meaning.[3] They further point out that the rule which requires ambiguous insurance contracts to be construed in favor of the insured does not sanction a perversion of the policy's language. The underlying theory of these cases is that a general liability policy is not intended to extend coverage in this situation, but rather that such coverage is afforded by so-called builder's risk insurance or a performance bond.

The case of S. L. Rowland Const. Co. v. St. Paul Fire & Marine Co., 72 Wash.2d 682, 434 P.2d 725 (1967), however, holds to the contrary. It finds that exclusion (h) (4) is ambiguous as applied to a fact situation such as the one here. It is not clear, the Court says, whether the exclusion applies only to the part of the entity which caused the damage or to the entity itself which the insured has constructed. The Court specifically found that the reasoning of the *Kendall* case, *supra*, was not persuasive. 434 P.2d at 729 n. 4.

In addition to the *Rowland* case, *supra*, appellants have urged upon this Court as a basis for finding exclusion (h) (4) ambiguous the fact that a National Underwriters Company Bulletin, dated August 1955 states:

"A common source of argument—not answered at present—is liability arising out of a piece of equipment with several distinct parts, all sold or installed by the same insured at the same time. Should a defect in one part or a faulty installation of that part damage the balance of the equipment, it is not clear whether the exclusion would deny coverage for damages to the entire piece of equipment or only to the portion causing the damage."

It was this very language, in fact, on which the Court in the *Rowland* case relied for finding the exclusion ambiguous. Further, appellant urges that the insurance industry in 1966 redrafted the exclusion in light of the alleged ambiguity in an attempt to now make clear that in situations such as the one at bar no coverage is intended.

After careful review of the policy in question and the cases cited above, this Court has concluded that exclusion (h) (4) is ambiguous as applied to the unusual facts of this case. We therefore follow the lead of the *Rowland* case and find that Liberty Mutual was bound to assume PBI's defense. In so doing, we point out that although the insurance industry may not have intended a comprehensive liability policy to cover the claim in this case it failed to effectuate this intent. No perversion of the policy's language is needed to bring us to this conclusion. We additionally point out that while the statement in the National Underwriters Company Bulletin and the subsequent changes in the policy's language were given due consideration by the Court, they were not in any way deemed controlling on the issue of ambiguity. Rather, it was the Court's own analysis of the policy's language and the reasonable interpretation we could afford that language.

---

3. Under Pennsylvania law ambiguous insurance contracts are construed against the insurer. See, e.g., Papadell v. Harleysville Mut. Cas. Co., 411 Pa. 214, 191 A.2d 274 (1963); Frisch v. State Farm Fire Ins. Co., Pa.Super., 275 A.2d 849 (1971).

■ Our conclusion, then, is that the policy's exclusion only operated to exclude coverage of the defective saddle, *i. e.* the part manufactured by PBI that actually rendered the tramway inoperative, and that Liberty Mutual was required to defend PBI with respect to the lawsuit to recover damages for the rest of the tramway. Liberty Mutual's failure to perform its contractual duty of defending PBI against the claim of Brannaum cost PBI a total of $34,420.-14, which sum PBI is entitled to recover from Liberty. Accordingly, the judgment of the district court will be reversed and the case remanded to that court with instructions to enter judgment in the amount of $34,420.14 with such interest as the District Court may find to be due on the above-mentioned $34,420.14 in favor of PBI and against Liberty Mutual.