## Mehlig v. Harter

*Armin Feldman*, for plaintiffs.
*Roger N. Nanovic*, for garnishee.

LAVELLE, *P.J.*, April 11, 1979—In this garnishment proceeding we are called upon to construe certain exclusionary provisions contained in

a building contractor's liability insurance policy. The matter comes before us upon the carrier-garnishee's motion for judgment on the pleadings. A brief review of the facts is necessary for resolution of the questions presented.

During 1973, plaintiffs entered into a contract with a William F. Joy for construction of a modular home upon plaintiffs' lot in the Borough of Weatherly. Joy subcontracted with defendant for construction of the basement foundation and the basement walls. Shortly after the completion of this work, one of the walls collapsed, causing damage to the home and to plaintiffs' personal property in the home. At the time the work was done, defendant was insured under a contractors' general liability insurance policy issued by The Ohio Casualty Insurance Company.

Plaintiffs filed the within action against defendant seeking damages for the cost of removing and replacing the collapsed basement walls, loss of use of the premises following the collapse, the value of certain personal property which was damaged and other consequential damages. Prior to trial, the parties stipulated that the known damages sustained by plaintiffs were in the amount of $6,250. A jury returned a verdict in favor of plaintiffs in that amount and judgment was entered on the verdict.*

Following the entry of judgment, plaintiffs caused to be issued a writ of attachment execution naming The Ohio Casualty Insurance Company as garnishee and attaching the liability policy issued by garnishee to defendant.

---

*Garnishee defended the claim on a non-waiver or reservation of rights basis, maintaining that the plaintiffs' loss was not covered by its policy by reason of certain exclusionary provisions contained therein which will be more fully discussed in this opinion.

Ohio Casualty Insurance Company takes the position that no coverage is afforded under the policy to defendant for the damages sustained by plaintiffs, relying upon three exclusionary provisions under coverage B, property damage liability, which provide that insurance does not apply:

"(n) to property damage to the named insured's products arising out of such products or any part of such products;

"(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

"(q) to property damage included within: . . . (2) the collapse hazard in connection with operations identified in this policy by a classification code number which includes the symbol 'c'."

## DISCUSSION

In construing the language of an insurance policy, we are guided by several well-established principles of construction. The first, of course, is that insurance contracts are regarded as contracts of adhesion, their multitudinous provisions being written by the insurer for the insured who has no bargaining power and is unable to negotiate or alter the given language of the policy; therefore, all contradictory or ambiguous policy provisions must be resolved strictly against the insurer and in favor of the insured: Treasure Craft Jewelers, Inc. v. Jefferson Insurance Co. of New York, 431 F. Supp. 1160, (E.D. Pa. 1977); Pittsburgh Bridge & Iron Works v. Liberty Mut. Ins. Co., 444 F. 2d 1286 (3d Cir. 1971). This rule however, has no application where the language of the policy in question is clear

and unambiguous and in such a case doubt cannot be created for the purpose of resolving it in favor of the insured. The court may not rewrite an insurance contract or construe clear and unambiguous language in such a contract to mean other than what is said: Weiner v. Metropolitan Life Ins. Co., 416 F. Supp. 551 (E.D. Pa. 1976); Blocker v. Aetna Cas. & Sur. Co., 232 Pa. Superior Ct. 111, 332 A. 2d 476 (1975).

Applying the foregoing principles to exclusion (o) of the policy, we find nothing ambiguous or contradictory in the language used in that exclusion clause. We believe that the plain meaning of the language of this exclusion is simply that if the insured should become liable for property damage caused by an accident to work performed by or on behalf of the insured which accident arises out of the work or any portion thereof, the cost of replacement or repair of that work will not be covered. Under this analysis, coverage would not be afforded for the costs of replacement or repair of the basement walls allegedly negligently constructed by the defendant-insured, although coverage would be afforded for any property damage caused to other property of plaintiffs other than the completed work of the insured.

Counsel have not cited, nor has our own research uncovered any decisions of our own state courts directly on point. However, abundant decisions from other jurisdictions support the foregoing analysis.

This result was reached by a California court in Liberty Building Co. v. Royal Indemnity Co., 346 P. 2d 444 (1959), construing an exclusionary clause substantially similar to (o) contained in the within garnishee's policy. In Liberty Building, the

insured was a building contractor covered by a products liability insurance policy issued by defendant. Plaintiff constructed a large number of dwelling houses upon its own property, most of which were sold prior to completion. After the buyers took possession of the houses, many of the structures developed defects in the outside stucco walls. Claims were made against the insured on the basis of a defective mixture in the stucco which permitted water absorption into the stucco which caused damage to the walls. The court held that as a result of the exclusionary clause, the policy afforded the insured no protection against liability for the cost of repair or replacement of the stucco; however, the exclusion was held inapplicable to liability for damage to any other property caused by the defective stucco or for personal injury:

"This Exclusion means that if the insured becomes liable to replace or repair any 'goods or products' or 'premises alienated' or 'work completed' after the same has caused an accident because of a defective condition, the cost of such replacement or repair is not recoverable under the policy. However, if the accident also caused damage to some other property or caused personal injury, the insured's liability for such damage or injury becomes a liability of the insurer under the policy, and is not excluded. For example, if a contractor builds a house and as a result of an improper mixture of the stucco, water is absorbed into the walls and the stucco cracks and falls off and a child is injured by the falling stucco, the injury to the child would not be excluded under Exclusion (f) but the replacement cost of the stucco would be excluded. Also, if the water absorbed into the walls should reach the

interior walls and injure a valuable painting hanging there, the damage to the painting would be recoverable under the policy while the damage to the walls would not." 346 P. 2d at 446-447.

A similar result was reached in Kendall Plumbing, Inc. v. St. Paul Mercury Insurance Co., 189 Kan. 528, 370 P. 2d 396 (1962), where the policy excluded from coverage damage to or destruction of "any goods or products manufactured, sold, handled or distributed by the insured or work completed by or for the insured out of which the accident arises." There, the insured had installed a heating and air conditioning system in the course of which the defective installation of an electrical control caused damage to a refrigeration unit. Both the control and the unit were supplied by the insured. Holding the exclusionary clause applicable, the Supreme Court of Kansas held that no coverage was afforded under the policy. In Pittsburgh Plate Glass Co. v. Fidelity and Casualty Co. of New York, 281 F. 2d 538 (3d Cir. 1960), plaintiff-insured had sold paint for use by a manufacturer of outside jalousies. The paint proved defective, peeled, and flaked, and the surfaces of the jalousies were thereby exposed to the elements and were damaged. In construing a similar provision, the Third Circuit Court of Appeals held that while the policy clearly did not cover the cost of replacement of the paint itself, the damage to the jalousies upon which the paint was applied, the property of the insured's customer which was not supplied by the insured, was covered. In Pittsburgh Bridge & Iron Works v. Liberty Mut. Ins. Co., supra, the insured provided saddles for the construction of a tramway system, which saddles proved defective and caused damage to other components of the system not supplied

by the insured. The Third Circuit Court of Appeals held that the exclusionary provision, substantially similar to that presented herein, precluded coverage for replacement of the defective saddles, but afforded coverage for the cost of repair or replacement of other components of the tramway system caused by the defective saddles and not supplied by the insured. The court, in that case, did find, under the peculiar facts of the case, that the exclusionary clause was ambiguous and resolved that ambiguity in favor of the insured. In the other cases hereinbefore cited, none of the courts had any difficulty in construing and applying the language of the exclusionary clauses. The following additional authorities are in accord with the foregoing analysis: Aetna Ins. Co. v. Pete Wilson Roofing & Heating Co., Inc., 289 Ala. 719, 272 S. 2d 232 (1973) (coverage denied for cost of replacement of defective roof constructed by the insured); Geddes & Smith, Inc. v. St. Paul Mercury Indem. Co., 47 Cal. Rptr. 564, 407 P. 2d 868 (1965) (sale by insured of defective doors; exclusion held to exclude liability for cost of doors but not to exclude the cost of replacing same, where the doors were not originally installed by the insured and hence were not its "work" under the terms of the policy).

Plaintiffs rely upon Hauenstein v. St. Paul-Mercury Indem. Co., 242 Minn. 354, 65 N.W. 2d 122 (1954), in support of the proposition that garnishee is liable for the cost of replacement of the basement walls which collapsed. In that case, the insured was a distributor of a new type of plaster which it sold to a contractor who used it in the construction of a hospital. After application, the plaster shrunk and cracked necessitating its removal and the replastering of the walls and ceilings. The policy denied coverage for "injury to or destruction

of . . . any goods or products manufactured, sold, handled or distributed by the insured. . . ." The court held that the carrier was not liable for the cost of the defective plaster, but was liable for damages measured either by the diminution of the market value of the building as a result of the defective plaster, or the cost of removing the defective plaster and restoring the building to its former condition plus any loss from deprival of use, whichever sum is the lesser. However, in Hauenstein the insured was merely the supplier of the product and did not install it, and consequently would not come under the exclusion presented herein covering liability for completion of the insured's work. Hauenstein therefore does not support plaintiffs' contention of liability.

Applying these principles to the case at hand, it is clear, then, that garnishee will not be liable for the cost of replacing or repairing the collapsed basement walls, nor for the cost of the temporary shoring and other emergency measures taken by plaintiffs to prevent further damage to the structure. Exclusion (o), however, does not insulate garnishee from liability for the other damages sustained by plaintiffs, including damage to personal property located in the home and loss of the rental value of the premises for a reasonable period of time pending repairs to the home.

We resolve the final question, concerning interpretation of the "collapse hazard" exclusion, against the garnishee. It is not at all clear from the record that the occurrence complained of herein constitutes a "collapse" within the meaning of the policy. Moreover, it is not clear to the court that collapse hazard had been sufficiently excluded by use of the classification code prescribed by the carrier's own policy. Accordingly, the garnishee's mo-

tion for judgment on the pleadings as to the applicability of the collapse hazard exclusion will be denied.

For the reasons set forth above, we enter the following

## ORDER

And now, April 11, 1979, upon consideration of the motion for judgment on the pleadings filed by garnishee The Ohio Casualty Insurance Company, and after argument thereon, it is hereby ordered that partial summary judgment is entered in favor of said garnishee to the extent that said garnishee shall not be liable for any damages sustained by plaintiffs as the result of replacement, repair, or shoring of the basement walls constructed by defendant. With respect to all other damages claimed by plaintiffs, garnishee's motion for judgment on the pleadings is denied.