**PITTSBURGH PLATE GLASS COMPANY, Appellant,**

v.

**FIDELITY AND CASUALTY COMPANY OF NEW YORK.**

**No. 13203.**

United States Court of Appeals Third Circuit.

Argued June 23, 1960.

Decided Aug. 8, 1960.

Rehearing Denied Aug. 30, 1960.

Richard B. Tucker, Jr., Pittsburgh, Pa. (Patterson, Crawford, Arensberg & Dunn, Pittsburgh, Pa., on the brief), for appellant.

Joseph F. Weis, Pittsburgh, Pa. (Weis & Weis, Pittsburgh, Pa., on the brief), for appellee.

Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

The primary question raised on this appeal is whether under the insurance contracts issued to Pittsburgh Plate Glass Company ("Pittsburgh") by Fidelity and Casualty Company of New York ("Fidelity") it was incumbent upon Fidelity to appear and defend on Pittsburgh's behalf a law suit instituted by Columbia Air-O-Blind Company in the United States District Court for the Eastern District of South Carolina and indemnify Pittsburgh for the amount paid by it in settlement.

Fidelity, a New York corporation engaged in the insurance business in the Commonwealth of Pennsylvania, sold to Pittsburgh two liability insurance policies. So far as this suit is concerned, the policies were identical. It is the extent of their coverage which is in issue.[1]

Pittsburgh, a manufacturer of paint, sold its product to Columbia Air-O-Blind Company ("Columbia") of Columbia, South Carolina, during the years 1949 to 1954. Columbia was a manufacturer of jalousies, or outside venetian blinds, and applied the paint to louvers and other steel parts which it incorporated into the jalousies. The finished product was sold and installed by Columbia throughout South Carolina and Georgia.

The paint supplied by Pittsburgh had been satisfactory during the period 1947–1949; however, Columbia thereafter began to receive numerous complaints to the effect that the paint was peeling and flaking off. The paint came off in patches varying from the size of a quarter to that of a man's hand. Inasmuch as the rest of the paint adhered to the surface of the jalousies, they were partially painted and partially bared. These bare surfaces which were exposed to the elements rusted and deteriorated. As a result of customers' demands, Columbia was compelled to remove the jalousies, return them to its plant, soak them in a chemical bath, strip them to remove the adhering paint, and brush off the excess paint, repair and reweld rusted parts, treat the rusted areas with rust-inhibitor, clean and prepare the metal for repainting, apply and bake the new paint, and finally reinstall the jalousies.

Following unsuccessful attempts to settle their differences amicably, Columbia brought suit against Pittsburgh on August 3, 1954, in the United States District Court for the Eastern District of South Carolina to recover the expenses of repairing the jalousies and other damage caused by the use of Pittsburgh paint. Pittsburgh made elaborate preparations to defend the suit but finally settled with Columbia by paying $33,000. Fidelity was fully apprised of Columbia's claims and suit at all stages of the litigation, and Pittsburgh specifically demanded that it come in and defend the action.

Fidelity, when demand was first made upon it, examined the complaint and refused to defend on the ground that the complaint alleged merely a peeling of Pittsburgh paint without specific mention of any damage to the jalousies. It

---

1. The insurance policies provide as follows:

"1. * * *

"COVERAGE B—PROPERTY DAMAGE LIABILITY. To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law, or assumed by him under contract as defined herein, for damages because of physical injury to or physical destruction of tangible property.

"2. Wherever the word 'accident' appears in the policy with respect to * * Coverage B, it shall be understood to mean an occurrence causing physical injury to or physical destruction of tangible property."

Exclusion (d) under the above coverage exempts application of the policies from injury to or destruction of "any goods or products manufactured, sold, handled or distributed * * * by the named insured * * * out of which the accident arises."

The policies also required the company to "defend * * * any suit against the insured alleging such injury * * * or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent * * *."

contended that the peeling of the paint was not a physical injury to the jalousies as comprehended by the policies. Inasmuch as Fidelity adhered to this view even following the settlement of the action, Pittsburgh instituted suit in the Western District of Pennsylvania.[2] The district court entered judgment for the defendant.

No jurisdictional issue has been raised, nor do we perceive one. In this diversity case, Pennsylvania law was applied and we see no error in so doing.

The duty of a liability insurance carrier to defend actions against its insured has been considered in the very recent case in the Supreme Court of Pennsylvania, Cadwallader v. New Amsterdam Casualty Co., 1959, 396 Pa. 582, 152 A.2d 484. It was there stated, 152 A.2d at page 488:

"It is clear that where a claim potentially may become one which is within the scope of the policy, the insurance company's refusal to defend at the outset of the controversy is a decision it makes at its own peril."

In support of this proposition, the court cited as the leading case on the subject Lee v. Aetna Casualty & Surety Co., 2 Cir., 1949, 178 F.2d 750. At pages 752–753 of that opinion, Judge Learned Hand stated:

"* * * [T]he injured party might conceivably recover on a

claim, which, as he had alleged it, was outside the policy; but which, as it turned out, the insurer was bound to pay. Such is the plasticity of modern pleading that no one can be positive that that could not happen. In such a case of course the insurer would not have to defend; yet, even then, as soon as, during the course of the trial, the changed character of the claim appeared, we need not say that the insured might not insist that the insurer take over the defence. When, however, as here, the complaint comprehends an injury which may be within the policy, we hold that the promise to defend includes it. * * *

"It follows that, if the plaintiff's complaint against the insured alleged facts which would have supported a recovery covered by the policy, it was the duty of the defendant to undertake the defence, until it could confine the claim to a recovery that the policy did not cover."

Thus, we fortunately need not speculate as to what the law of Pennsylvania is on the subject before us.[3]

Turning to the facts of the instant case, we are first met with the complaint Columbia filed in the federal district court. As the district court stated, Columbia predicated its complaint upon the theory of warranty.[4] However, as

2. The parties agreed that under the terms of the policies the insurance did not apply to the paint itself and that there was no liability on the part of the insurance company to pay for defective paint or the costs of the replacement thereof.

3. We would not be justified in adopting Fidelity's analysis or any other analsis of the preceding cases in Pennsylvania, for in the Cadwallader case the Pennsylvania Supreme Court thoroughly considered them and held them to be consistent with the opinion there set forth.

4. The complaint stated, inter alia:
  "3. In the spring of 1951 plaintiff received its first complaint from its cus-

tomers that the white baking enamel, applied by plaintiff on awnings and jalousies manfactured by it in accordance with instructions furnished by defendant, was not holding up and was peeling. This matter was brought to the attention of defendant through its duly authorized agents who replied to plaintiff that occasionally a bad drum of paint might slip through, but assured plaintiff that further shipments would be of proper quality; plaintiff received similar complaints from customers from time to time, but each time the matter was brought to the attention of defendant, plaintiff was assured that there was nothing wrong with the paint, and it was suggested by defendant that perhaps

the Supreme Court of Pennsylvania recognized in the Cadwallader case, supra, the complaint must be viewed in light of the liberality of pleading under the Federal Rules of Civil Procedure. Not only does Rule 8(e) (2) [5] permit alternative and inconsistent pleading, but Rule 15(b) permits amendments to conform to the evidence. In addition these provisions must be read in light of Rule 8(a), which states:

> "A pleading which sets forth a claim for relief * * * shall contain * * * (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief to which he deems himself entitled."

In light of the foregoing rules, the opinion in the Cadwallader case, supra at page 489 of 152 A.2d, recognized that there was merit to the contention that if a claim based on action which would fall within the policy would ultimately be sustained in a federal court under the complaint, despite other allegations which

fall without the policy, the insurer is duty bound to defend the insured. The Supreme Court of Pennsylvania was not required to decide the issue in that case but clearly indicated its position on the matter here in controversy.

Certainly Columbia's claim for damages could have been sustained on the basis of negligence if the case had gone to trial, and proof of damage to the jalousies by rust would have been permitted. The complaint adequately set forth damage to the finished product, i. e., the jalousies, painted and baked. Once the paint has been baked on to the steel and aluminum parts of the jalousies, the paint is no longer identifiable as a separate entity but is intended to and does become a part of the finished product. Thereafter, any damage to the finished product, such as flaking or peeling of the paint, is property damage covered by the liability insurance policies here in question. A reading of the complaint convinces us that the damage alleged was such that the insurer was more than adequately apprised that damage to

---

plaintiff had not applied the paint in the proper manner.

"4. Plaintiff has checked carefully and has found that its process of application of the white baking enamel has been proper and in accordance with instructions given by defendant and in accordance with the most approved technical procedures, and plaintiff alleges that the peeling which has taken place and which will continue to occur is due to the defective quality of the white baking enamel sold it by defendant and/or to the lack of suitability of said white baking enamel for the purpose for which it was sold to plaintiff.

"5. Complaints of peeling continued to come in from plaintiff's customers in ever increasing numbers. Examination discloses that the white baking enamel began to peel within a few months after the application of the enamel, and has peeled or is peeling to the extent that the entire surface has to be repainted. This necessitates the taking down of the awnings or jalousies, the returning of them to plaintiff's plant in Columbia, South Carolina, the removing of the paint surface, the baking of a new coat of enamel on the surface, and the installing of the awnings or jalousies.

* * * * *

"7. The above expense which plaintiff has undergone and will continue to have to undergo is imposed upon it by virtue of its obligation to its customers and is brought about solely through the defective or unsuitable white baking enamel sold to plaintiff by defendant as is hereinabove set out."

5. Rule 8(e) (2), 28 U.S.C.A., provides:

"A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or on equitable grounds or on both. All statements shall be made subject to the obligations set forth in Rule 11." (Rule 11 relates only to provisions governing signing of pleadings.)

the *completed* product had been sustained. This point would appear to be one of first impression in Pennsylvania, but we are confident that the Pennsylvania courts if presented with the problem would so decide it.[6]

■ An additional issue has been raised by the appellant concerning the amount of damages it is entitled to recover. Following Fidelity's refusal to come in and defend the Columbia action, Pittsburgh not only hired a South Carolina firm of attorneys to defend the action which had been instituted against it, but assigned two members of its legal department to prepare the defense. No question has been raised by Fidelity concerning the appropriateness of the former charges; however, Fidelity does assert it is not liable for the latter counsel fees. Fidelity maintains that since these two attorneys were members of Pittsburgh's legal department, paid on an annual salary basis, maintained no separate offices of their own, and since they were paid nothing more than their normal salaries, it is not required to reimburse Pittsburgh for the time they devoted to the defense of this action.

A thorough search of the authorities has failed to uncover any case other than Liberty Mutual Insurance Co. v. Atlantic Coast Line R. Co., 1942, 66 Ga.App. 826, 19 S.E.2d 377, which considers the application of the reasonable attorney's fee standard to attorneys paid on an annual basis. In that case the railroad defended an action through a firm of attorneys employed on an annual retainer. The railroad sued the insurer to recover the reasonable value of the attorneys' services and the court held that inasmuch as the insurer had breached the contract of insurance, it was liable to the insured for all damages directly resulting to it from the refusal to defend. At page 382 of 19 S.E.2d the court stated:

"Counsel of the plaintiff in defending the suit against it, notwithstanding they were employed by the year, were being compensated by the plaintiff for their services in the particular suit. Counsel represented the railroad in defense of a suit against it, the defense of which another had contracted for a consideration to undertake, and the plaintiff if entitled to recover on the policy, would be entitled to recover for such services a reasonable fee."

We are convinced that this is the proper measure of damages and that a Pennsylvania court presented with the problem would so find. If Pittsburgh's attorneys had refrained from activity, the workload and consequently the fee of the South Carolina attorneys necessarily would have been increased. There is no reason in law or in equity why the insurer should benefit from Pittsburgh's choice to proceed with some of the work through its own legal department.

The reasonableness of the traveling expenses incurred by Pittsburgh's attorneys was stipulated. However, the amount of their salary to be allotted to the defense preparations for the Columbia suit was not stipulated nor was its reasonableness. The district court made no findings whatsoever in this regard.

Accordingly, the judgment of the district court will be reversed and the cause remanded for further action not inconsistent herewith.

6. A similar conclusion was arrived at in the following cases: Geddes & Smith, Inc. v. Saint Paul-Mercury Indemnity Co., 1959, 51 Cal.2d 558, 334 P.2d 881; Hauenstein v. Saint Paul-Mercury Indemnity Co., 1954, 242 Minn. 354, 65 N.W.2d 122.