364 F.2d 246
 BOWMAN STEEL CORPORATION, Successor by Merger to American Steel Band Company, a Pennsylvania Corporation, Appellant,
v.
LUMBERMENS MUTUAL CASUALTY COMPANY, an Illinois Corporation.
 No. 15647.
 United States Court of Appeals Third Circuit.
 Argued March 29, 1966.
 Decided July 13, 1966.
 
 V. C. Short, Pittsburgh, Pa. (Joseph A. Katarincic, Kirkpatrick, Pomeroy, Lockhart & Johnson, Pittsburgh, Pa., on the brief), for appellant.
 Wallace E. Edgecombe, Pittsburgh, Pa. (Royston, Robb, Leonard, Edgecombe & Miller, Pittsburgh, Pa., on the brief), for appellee.
 Before STALEY, Chief Judge, GANEY, Circuit Judge, and SHERIDAN, District Judge.
 OPINION OF THE COURT
 STALEY, Chief Judge.
 
 
 1
 In 1960 the American Steel Band Company[1] began to manufacture a type of metal siding under the trade name of steelbestos. The product, which consisted of asbestos felt bonded onto steel sheets, was sold and distributed through American Steel Band's wholly owned subsidiary, the Bowman Steel Corporation. Steelbestos, however, was illstarred; it proved to be defective after it had been erected and installed on several buildings. It became discolored and began to delaminate, i. e., the asbestos felt separated from the steel sheets exposing the latter to the elements.[2] On receipt of complaints from numerous customers, Bowman examined the defective siding and conducted an extensive campaign to replace the already-installed siding.
 
 
 2
 Lumbermens Mutual Casualty Company ("Lumbermens") had issued to American Steel Band and Bowman Steel comprehensive liability insurance policies covering the years 1960, 1961 and 1962.[3] Coverage D of the policy, "Property Damage Liability — Except Automobile," obligated Lumbermens "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident." Though the policy excluded coverage for injury to or destruction of the property of the insured, American Steel Band Company[4] had insurance coverage for bodily injury or property damage which arose by reason of the "products hazard" as defined therein.[5] Briefly, the policy definition of "products hazard" extended coverage for bodily injury or property damage which resulted from the insured's "goods or products manufactured, sold, handled or distributed * * * if the accident occurs after possession of such goods or products has been relinquished to others * * *, [or] operations, if the accident occurs after such operations have been completed or abandoned * * *."
 
 
 3
 Bowman incurred expenses of approximately $417,000 in removing and replacing the defective siding for fifty-six customers. The cost figure recited above did not include the cost of manufacturing the new siding. In December of 1963, Bowman brought suit in the district court against Lumbermens to recover for losses it claimed it was due under its liability policies. Recovery was sought for losses of $59,803.41 for the policy year of 1960, $100,000 (the policy limit) for the policy year of 1961, and $42,063.48 for the 1962 policy year. Lumbermens denied coverage, and the district court granted its motion for summary judgment, holding that the only damage which resulted from the defective siding was to the siding itself and not to the buildings to which it had been attached. The court stated that there was no "extrinsic damage" to the purchasers by reason of the failure of the siding and that "there is no liability for the mere failure [of the purchaser] to obtain the anticipated advantages derived from the ownership of the purchased article."[6]
 
 
 4
 We cannot agree with the district court's conclusion that no damage resulted to the purchasers' buildings by reason of the installation of defective siding, and accordingly we must reverse.
 
 
 5
 Jurisdiction of this action is based on diversity of citizenship. The parties have relied on Pennsylvania law and have properly done so on the record before us. Cf. Eastcoast Equipment Co. v. Maryland Cas. Co., 207 Pa.Super. 383, 218 A.2d 91, 95 at n. 5 (1966).
 
 
 6
 As we have stated, the primary issue raised on this appeal is whether there was damage to the property other than that of the insured on which liability under the policy's products hazard provision may be predicated.[7] This is not a novel question; this court has been faced with it before, Pittsburgh Plate Glass Co. v. Fidelity & Cas. Co., 281 F.2d 538 (C.A.3, 1960), as have other appellate courts, Dakota Block Co. v. Western Cas. & Surety Co., S.D., 132 N.W.2d 826 (1965); Bundy Tubing Co. v. Royal Indem. Co., 298 F.2d 151 (C.A.6, 1962); Geddes & Smith, Inc. v. St. Paul-Mercury Indem. Co., 51 Cal.2d 558, 334 P.2d 881 (1959); Hauenstein v. St. Paul-Mercury Indem. Co., 242 Minn. 354, 65 N.W.2d 122 (1954). The Pennsylvania courts have yet to rule on this issue; however, this court was applying Pennsylvania law when it decided the Pittsburgh Plate Glass case, supra. Therefore, that case is controlling unless it is distinguishable from the present case.
 
 
 7
 In determining whether there was damage other than to the product itself, a quote from the Hauenstein case, the root case in this area of decisional law, is illuminating.
 
 
 8
 "* * * Aside from any injury to the plaster itself, was the building injured and damaged by its application? It is undisputed that after this new type of plaster had been applied it shrunk and cracked to such an extent that it was of no value and had to be removed so that the walls and ceilings could be replastered with a different material. No one can reasonably contend that the application of useless plaster, which has to be removed before the walls can be properly replastered, does not lower the market value of the building. Although the injury to the walls and ceilings can be rectified by the removal of the defective plaster, nevertheless, the presence of the defective plaster on the walls and ceilings reduced the value of the building and constituted property damage." 242 Minn. at 357, 65 N.W.2d at 125.
 
 
 9
 The Minnesota court analogized that the injury to the building was similar to the case in which sand was wrongfully dumped on one's land. It stated that though there would be no intrinsic damage to the land, the owner could recover for the loss of use or the cost of removal.
 
 
 10
 We went even further in the Pittsburgh Plate Glass case in holding that "[o]nce the [defective] paint has been baked on to the steel and aluminum parts of the jalousies, the paint is no longer identifiable as a separate entity but is intended to and does become a part of the finished product. Thereafter, any damage to the finished product, such as flaking or peeling of the paint, is property damage covered by the liability insurance policies here in question." 281 F.2d at 541.
 
 
 11
 We need not go so far as to rely on some theory of accession or fixtures to sustain the result we reach. The sound reasoning of the Hauenstein opinion, quoted above, leaves no doubt that once the siding had been installed and proved to be defective, the building to which it had been attached suffered a diminution in market value and was damaged to that extent.[8] The result recently reached by the South Dakota Supreme Court in Dakota Block Co. v. Western Cas. & Surety Co., S.D., 132 N.W.2d 826 (1965), fully supports our conclusion. For all practical purposes, that case is identical with the one presently before us. There, the plaintiff manufactured and sold a type of concrete block with a pre-finished exterior, the purpose of which was to eliminate the necessity of some other exterior covering, i. e., paint, siding, etc. Citing and reciting the facts in Hauenstein, Geddes & Smith, Bundy, Pittsburgh Plate Glass, supra, and Volf v. Ocean Acc. & Guarantee Corp., 50 Cal.2d 373, 325 P.2d 987 (1958) (dissenting opinion), the court concluded:
 
 
 12
 "We do not align ourselves with or reject the reasoning employed in any of the cases discussed or mentioned, except insofar as the element of property damage is concerned. We are satisfied that common sense dictates that there was substantial property damage to the entire school building when the exterior walls presented a faded, discolored, mottled and unsightly appearance in contrast to a uniform and eye-pleasing manifestation envisioned by the original plans. To say the damage in such instance can be confined to the blocks as distinct from the school building, we feel, is unrealistic and loses sight of the forest because of the trees." 132 N.W.2d at 830.
 
 
 13
 Not content to rest its argument on the absence of products hazard coverage, appellee raises two other issues to support affirmance. Before dealing with these matters, it is important to note that this case was decided on a motion for summary judgment. Therefore, if there exist any genuine issues of material fact, neither the district court nor this court can decide these questions. Associated Hardware Supply Co. v. Big Wheel Distributing Co., 355 F.2d 114 (C.A.3, 1965).
 
 
 14
 Lumbermens asserts that the decision of the district court should be affirmed on the grounds that Bowman failed to give it notice of the accidents[9] as required by the policy.[10] This issue, however, is not isolated; it is inextricably tied with Bowman's argument that Lumbermens had either waived notice or is estopped from raising it. Bowman also asserts that defendant's agent, Knox M. Young, was an agent who could receive notice and that he was, in fact, notified of the accidents. There is, however, no indication that he received notice in writing as is required by the policy.
 
 
 15
 The Pennsylvania law is clear that timely notice of the accident (in this case, "as soon as practicable") must be given. The cases delineate what is for the jury and what is not: unless there are special circumstances, the question of compliance with the policy's notice requirements is normally for the court; otherwise, it is for the jury. Jeannette Glass Co. v. Indemnity Ins. Co., 370 Pa. 409, 88 A.2d 407 (1952); Ross v. Mayflower Drug Stores, Inc., 338 Pa. 211, 12 A.2d 569 (1940); Edelson v. American Employers' Ins. Co., 92 Pa.Super. 90 (1927).
 
 
 16
 Here, the question of timeliness of the notice given is to a great extent dependent upon the manner in which notice was allegedly given. Bowman's affidavits indicate that defendant's agent was aware of the defects which had developed in the Steelbestos no later than March 1, 1961, and that the matter had been discussed with him in late 1960 or early 1961. The agent, Young, denies this. A question of credibility is presented and would preclude entry of summary judgment unless the alleged oral notice could not be substituted for the policy's requirement that it be in writing. The law of Pennsylvania requires that the insurer show prejudice where it has not received notice in the manner prescribed by the policy. Wiseman v. United States, 327 F.2d 701, 708 & n. 16 (C.A.3, 1964). No prejudice appearing on the record presently before us, genuine issues of fact exist with regard to the timeliness and manner in which notice was given aside from the issues of estoppel and waiver which also normally require the jury's consideration. Cf. Aetna Life Ins. Co. v. Moyer, 113 F.2d 974, 981 (C.A.3, 1940); Evans v. Metropolitan Life Ins. Co., 294 Pa. 406, 144 A. 294, 295-296 (1928).
 
 
 17
 Appellee further maintains that plaintiff's voluntary settlement of the claims against it relieves the insurer of liability. Since Pennsylvania law permits the insured to take steps to mitigate damages without consulting the insurer, see Leebov v. United States Fid. & Guar. Co., 401 Pa. 477, 165 A.2d 82, 84 (1960), we cannot, especially in the light of the question of the validity and effectiveness of the alleged notice, determine this issue here.
 
 
 18
 The judgment of the district court will be reversed and the cause remanded for disposition not inconsistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 American Steel Band Company merged with its wholly owned subsidiary, the Bowman Steel Corporation, and adopted the name of the latter. All references hereinafter to "Bowman" are to both corporations unless otherwise indicated
 
 
 [2]
 The cause of the product's failure appears to be undetermined
 
 
 [3]
 It is conceded that the policies are identical for all purposes involved in this suit
 
 
 [4]
 An endorsement to the policy provided:
 "It is agreed that the policy does not apply to the products hazard as defined therein." However, the following was typewritten below the aforementioned printed language: "This endorsement does not apply to: American Steel Band Company."
 
 
 [5]
 "(g) Products Hazard. The term `products hazard' means
 "(1) goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name, and if such accident occurs away from premises owned, rented or controlled by the named insured * * * provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such a container, rented to or located for the use of others but not sold;
 "(2) operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed * * *."
 
 
 [6]
 The opinion of the district court is reported at 244 F.Supp. 670
 
 
 [7]
 Defendant-appellee raises no argument that American Band's sales and distribution to and through Bowman Steel in any way would insulate American Band and its insurer from liability. In fact, it concedes liability if American Band's negligence caused accidental damage to the property of another. Brief for appellee, p. 8
 
 
 [8]
 While diminution in market value is evidence of damage, it is generally understood that the measure of damages is the cost of repair. 11 P.L.E. § 59 Damages. The Uniform Commercial Code, § 2-715(2) (b), 12A Purdon's Pa.Stat.Ann. § 2-715 (2) (b), would employ the same yardstick
 
 
 [9]
 We cannot concur with appellee's contention that the failure of the Steelbestos was not an "accident." For an extensive review of the Pennsylvania cases, see Moffat v. Metropolitan Cas. Ins. Co., 238 F. Supp. 165 (M.D.Pa., 1964), and Robert Hawthorne, Inc. v. Liberty Mutual Ins. Co., 150 F.Supp. 829, 831 & n.3 (E.D. Pa., 1957), aff'd, 251 F.2d 343 (C.A.3, 1958)
 
 
 [10]
 "10. Notice of Accident. When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable."