PITTSBURGH BRIDGE AND IRON
WORKS, Plaintiff,

v.

LIBERTY MUTUAL INSURANCE COM-
PANY, Defendant.

Civ. A. No. 68–1189.

United States District Court,
W. D. Pennsylvania.

April 21, 1970.

Meyer, Unkovic & Scott, Pittsburgh, Pa., for plaintiff.

Clem R. Kyle and Egler, McGregor & Reinstadtler, Pittsburgh, Pa., for defendant.

OPINION

GOURLEY, District Judge:

This is an action for damages brought by the insured, Pittsburgh Bridge & Iron Corporation, against the insurer, Liberty Mutual Insurance Company, resulting from defendant's failure to assume the defense of a claim brought by Fort Brannaum, Inc. and Colorado Fuel & Iron Corporation against plaintiff and for defendant's failure to pay the settlement and expenses incurred by plaintiff in defending the claim.

Plaintiff is a Pennsylvania corporation with its principal office and place of business in Rochester, Pennsylvania.

Defendant is a Massachusetts corporation with its principal office and place of business in Boston, Massachusetts. Jurisdiction is founded upon diversity of citizenship and the amount in controversy exceeds ten thousand dollars ($10,000.00), exclusive of interest and costs.

Following the parties' compliance with the pre-trial procedures prescribed in Local Rule 5 of this Court, the matter was heard non-jury. The essential facts have been set forth in a Pretrial Stipulation of the parties and supplemented by exhibits offered at trial. No oral testimony was offered. On the basis of the facts before the Court, and outstanding arguments and briefs presented by counsel for the respective parties, I find that judgment should be entered in favor of the defendant and against the plaintiff.

In the Pretrial Stipulation filed, the parties agreed to the following facts:

(1) That at all times relevant to this cause of action, plaintiff was an insured of defendant under a Comprehensive General Liability Insurance Policy, designated Policy No. LPI–181–001368–023.

(2) That the policy provided that the insurer would "pay on behalf of the insured, all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, incuding the use of loss thereof, caused by the accident".

(3) The policy further provided that the insurer would "defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof; even if such suit is groundless, false or fraudulent".

(4) That the policy included "products hazard" insurance, products hazard insurance being partially defined as follows in paragraph 3c(2):

"The term, 'products hazard' means operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement."

(5) That under Exclusions Section (h) of the policy no coverage was provided for injury to or destruction of "any goods, products or containers thereof manufactured, sold, handled, distributed, premises alienated by the named insured or work completed by or for the named insured out of which the accident arises".

(6) That in 1963, plaintiff erected a tramway system in Kentucky for Fort Brannaum, Inc. under a subcontract with John A. Roebling Sons Division of the Colorado Fuel & Iron Corporation.

(7) Pursuant to its obligations under the contract, Pittsburgh Bridge & Iron Corporation, had fabricated and installed in the tramway system a "saddle", which specifications deviated from the plans submitted to Pittsburgh Bridge & Iron by Colorado Fuel & Iron Corporation.

(8) That the cable utilized in the tramway system was manufactured and sold by Colorado Fuel & Iron Corporation. The same cable was installed in the tramway of Pittsburgh Bridge & Iron.

(9) Upon the completion of the tramway system in 1963, the tramway began to operate.

(10) In 1965, Fort Brannaum, Inc. notified plaintiff and Colorado Fuel & Iron Corporation that two of the outer strands of a cable had broken.

(11) That Pittsburgh Bridge & Iron notified defendant Liberty Mutual of Fort Brannaum's claim against Pittsburgh Bridge & Iron and that Liberty Mutual caused an investigation to be made of Fort Brannaum's complaints.

(12) That, as a result of Liberty Mutual's investigation of the inoperative tramway, Liberty Mutual received the attached letter from Frederick L. Walker, Engineer.

(13) That plaintiff requested defendant to assume defense of the action, but defendant denied coverage of the claim under the policy.

(14) Plaintiff secured the representation of the law firm of Meyer, Unkovic & Scott in Pittsburgh, Pennsylvania, and the law firm of Harbison, Kessinger, Lisle & Bush in Lexington, Kentucky, to represent its interests in the Fort Brannaum and Colorado Fuel & Iron company's claims.

(15) That on September 27, 1966, October 10, 1966, January 13, 1967, March 2, 1967, April 26, 1967, June 3, 1967, September 13, 1967, January 16, 1968 and January 19, 1968, plaintiff through its attorneys communicated with defendant, advising defendant of the status of the action and requesting defendant to assume the defense of the action.

(16) That on January 18, 1968, a tentative settlement was reached between the parties in which Pittsburgh Bridge & Iron agreed to pay ten thousand dollars ($10,000.00) in cash to Colorado Fuel & Iron Company and to assume the cost of removing the tramway system.

(17) That defendant was notified by letter of this settlement on January 19, 1968.

The letter to which paragraph (12) above refers and which was introduced in evidence as plaintiff's Exhibit 6 reads as follows:

October 6, 1965

Liberty Mutual Insurance Company
109 Walton Avenue
Lexington, Kentucky

Attention: Mr. Charles Gibbons

Re: Fort Brannaum Tramway Cable Support Investigation October 1, 1965

Gentlemen:

A visual inspection by this firm revealed two broken outer strands at a main cable supporting saddle.

By virtue only of this visual examination of conditions existing, considering the newness of this structure which would discount normal wear factors, we reached the following conclusions.

The seating of the cable at the saddle support was not designed to allow for horizontal movement. It appeared to us that a horizontal movement of the cable caused a pressure of the cable against an *edge* of the saddle seat creating a crimping or cutting action at a fairly sharp angle to the cable strand.

There is definite evidence on the top of saddle edge indicating this action having taken place.

We judge that this cutting or crimping action to be the immediate cause of the two broken strands.

Sincerely,
/signed/ Frederick L. Walker
Frederick L. Walker

---

The legal issues presented are:

(1) Whether, under a general comprehensive insurance policy which provides operations coverage but excludes damage to any goods, products or containers thereof, manufactured, sold, handled,

distributed or premises alienated by the named insured or work completed by or for the named insured out of which an accident (occurrence) arises, there is coverage for a tramway system erected by the named insured as subcontractor and which, after erection, becomes defective and inoperable as a result of one component part defectively fabricated by the named insured damaging another component part fabricated by the general contractor.

(2) Whether there was a duty upon the insurer to defend on behalf of the named insured the claim of the general contractor against the named insured, based on the information provided to the insurer.

With respect to the issue of coverage, it is plaintiff's basic contention that, while Section (h) (4) of the Comprehensive Liability Policy excludes plaintiff from coverage of damage resulting to the saddle component of the tramway, which was fabricated by plaintiff, Section (h) (4) does not exclude plaintiff from coverage of damage caused to the cable component fabricated by the general contractor and to the overall tramway system as a result of plaintiff's defective fabrication of the saddle.

Specifically, it is argued by plaintiff that the "product" and "work completed" by plaintiff was not the entire tramway system but rather only certain isolated components thereof. However, due to the substantial responsibility of plaintiff both to fabricate the saddle and to erect upon the premises of the owner the fully constructed tramway system, it cannot be said, on the facts of this case, that plaintiff's "product" and "work completed" was anything less than the entire tramway system. Accordingly, damage to the entire tramway system and components thereof was excluded under the clear and unambiguous terms of Section (h) (4) of the General Comprehensive Liability Policy.

Plaintiff cites the· decision of the Court of Appeals for the Third Judicial Circuit in Pittsburgh Plate Glass Co. v. Fidelity & Cas. Co. of N. Y., 281 F.2d 538 (1960) in support of the proposition that an insured manufacturing a defective component part of a larger product is not excluded by a "product" or "work completed" exclusion from coverage of damages resulting to another component of said larger product. However, I am of the opinion that the Court of Appeals was confronted with a factual situation significantly distinct from the one presented here.

In *Pittsburgh Plate Glass Co., supra,* the named insured, a paint manufacturer, sold paint to a manufacturer of venetian blinds which applied the paint to components of the venetian blinds and then sold the venetian blinds to, and installed them for, consumers. After a time, various consumers complained to the manufacturer of the venetian blinds that unusual peeling of the paint resulted in rust damage to the venetian blinds. Unable to settle the consumers' complaints amicably, the manufacturer of the venetian blinds sued the paint manufacturer, alleging damage to the finished venetian blinds resulting from defective paint. The paint manufacturer's insurer refused to defend, relying on the premise that the damage had resulted to the product of the insured and was therefore within the "product" exclusion of the General Comprehensive Liability Policy. The Court of Appeals found that damage had resulted to a product other than that of the insured and determined, therefore, that the "product" exclusion in the policy did not exclude coverage.

In the case before me, plaintiff, as subcontractor for Colorado Fuel & Iron Corporation, not only manufactured the saddle components of the tramway but also manufactured the beam components. In fact, plaintiff manufactured or was responsible to the general contractor for the manufacture of the entire tramway system excepting the cable components. Thus, unlike the paint manufacturer in the *Pittsburgh Plate Glass* case, *supra,* which clearly manufactured only the paint component of the venetian blinds,

plaintiff herein manufactured substantially the entire tramway system. Accordingly, to my mind, plaintiff's substantial participation in the manufacture of the entire tramway system rendered plaintiff subject to the Section (h) (4) "product" exclusion with respect to the completed product.

Moreover, plaintiff not only manufactured numerous components of the tramway system but also constructed the system from its components and installed the system on the premises of the owner. Section (h) (4) of plaintiff's General Liability Comprehensive Policy states a broader exclusion than appears in the case of *Pittsburgh Plate Glass Co., supra,* and precludes coverage of the insured for property damage to "work completed" by the insured as well as "products" manufactured by it. Thus, even if plaintiff's participation in the manufacture of most components of the tramway system did not bring the entire tramway system within the "product" exclusion, plaintiff's construction and installation of the entire tramway system came within the "work completed" exclusion.

Factually, the case before me is more akin to that of Home Indemnity Company v. Miller, 399 F.2d 78 (8th Cir. 1968), cited by defendant, wherein the "product" and "work completed" exclusions were held applicable to an entire home constructed by the named insured and the outside walls of which began to crack as a result of the insured's improper placement of footings and improper installation of the roof.

Accordingly, the Court finds that plaintiff's liabilities incurred for damage resulting to the cable components and entire tramway system were excluded from the coverage of its General Comprehensive Liability Policy by the Section (h) (4) exclusion.

The remaining question is whether the complaint filed by Fort Brannaum, Inc., and the third party complaint filed by Colorado Fuel & Iron Corporation against the named insured in the suit instituted in the United States District Court for the Eastern District of Kentucky, which pleadings are Exhibits 9 and 10 respectively in this Court, alleged facts which, if proved, would have supported a recovery covered by the policy and would have required the defendant-insurer herein to defend the former action. Pittsburgh Plate Glass Co. v. Fidelity & Cas. Co. of N.Y., *supra*, 281 F. 2d at 541.

A perusal of the Exhibits indicates that neither the facts alleged in the aforementioned pleadings nor the facts contained in the letter of Mr. Walker and which apprised defendant of the nature of the defects in the tramway system would have supported a claim by plaintiff against defendant within the coverage of the Comprehensive General Liability Policy. The pleadings in the former action, if proved, would have established that plaintiff manufactured, constructed and erected an entire tramway system, a work product of the plaintiff, which the clear and unambiguous language of Section (h) (4) excluded from policy coverage.

An appropriate Order is entered in accordance with the foregoing Opinion, which shall constitute my findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

### ORDER

Now, this 21st day of April, 1970, upon a non-jury trial of this civil action, it is hereby ordered that judgment be and the same is hereby entered in favor of defendant and against plaintiff.