852 F.2d 168
 FOREST CITY DILLON, INC.; et al, Plaintiffs,
Laminators, Inc., Defendant-Third Party Plaintiff-Appellee,
National Starch & Chemical Company, and Homasote Company,
Third-Party Defendants,
v.
AETNA CASUALTY & SURETY COMPANY, Third Party Defendant-Appellant.
 No. 87-3032.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 17, 1987.
Decided July 19, 1988.
 
 Albert J. Rhoa (argued), W. Andrew Hoffman, Rhoa, Follen, Rawlin & Johnson Co., L.P.A., Cleveland, Ohio, for appellant.
 William A. Viscomi, Robert H. Eddy, Gallagher, Sharp, Fulton & Norman, Cleveland, Ohio, Georganne V. Daher, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., John P. O'Dea, argued, for appellee.
 Before MARTIN and GUY, Circuit Judges; and, JOHNSTONE, Chief District Judge.*
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 Aetna Casualty & Surety Company appeals the district court's order requiring Aetna to indemnify Laminators, Inc. for any and all damages Laminators may be compelled to pay as a result of Forest City Dillon, Inc.'s action against Laminators. Aetna also challenges the court's order requiring it to reimburse Laminators for the attorneys' fees incurred by Laminators in defending the underlying action and in seeking this declaratory judgment against Aetna.
 
 
 2
 Beginning in October 1977, Forest City contracted to buy building panels manufactured and sold by Laminators. The building panels, called Alum-A-Sote panels, consisted of aluminum facing attached to a core of recycled wood. The panels were to be used on the exterior of Forest City's pre-assembled housing units.
 
 
 3
 In February 1980, Forest City first notified Laminators that the panels were defective in that the aluminum facing was separating from the wood. According to the General Manager of Forest City, the panels could be repaired by covering them with another material. Ken Yarus, another Forest City employee, stated that the property damage was confined to the panels themselves, and that the panels could be repaired or replaced without affecting "the structural integrity of the building."
 
 
 4
 At the time the panels began to delaminate and corrode, two insurance policies issued by Aetna to Laminators were in full force and effect. A "Comprehensive General Liability" policy provided that Aetna would reimburse Laminators for any damages Laminators became obligated to pay because of "bodily injury or property damage to which this insurance applies." This policy also required Aetna to defend any suit against Laminators "seeking damages on account of such ... property damage, even if the allegations of the suit are groundless, false, or fraudulent." An "Umbrella" policy similarly obligated Aetna to reimburse Laminators for damages Laminators became obligated to pay because of property damage "to which this insurance applies." This last phrase is important because of two types of exclusionary provisions included in these policies.
 
 
 5
 Both policies contained "business risk" exclusion provisions. The Comprehensive General Liability policy had a clause which provided that the insurance did not cover "property damage to the named insured's product arising out of such product or any part of such products...." A similar clause in the Umbrella policy excluded coverage for "property damage to the named insured's product arising out of such products or any part of such products, if such property damage occurs away from premises owned by or rented to the named insured."
 
 
 6
 The two policies also contained virtually-identical "sistership" exclusion provisions. These clauses excluded coverage for
 
 
 7
 damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's product or work completed by or for the named insured or of any property of which such products or work form a part, if such products are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.
 
 
 8
 On May 30, 1980, when Aetna was initially notified that Laminators may have a claim under the policies as a result of the problems Forest City was experiencing with the panels, Aetna declined coverage. Aetna's response was based on its belief that, because the property damage complained of was confined to the panels themselves, coverage was specifically excluded by either or both the "business risk" or "sistership" exclusions.
 
 
 9
 On March 22, 1982, Forest City brought an action against Laminators in Ohio state court, and Laminators subsequently removed the action to federal district court. The complaint alleged, among other things, that the panels manufactured and sold by Laminators had corroded to the extent that they were unfit for incorporation into pre-assembled building units. The complaint also alleged that Forest City has been "or will be called upon to replace and repair all of their units incorporating" Laminators' panels. Forest City initially sought $3 million in damages, and the court subsequently permitted Forest City to increase the amount of the damages being sought to $7 million.
 
 
 10
 On April 22, 1982, Laminators' lawyers met with an Aetna representative who was not a lawyer to discuss Forest City's claims. At this meeting, Laminators provided Aetna with a legal memorandum intended to convince Aetna that its prior declination of coverage was without merit and that Aetna was obligated to defend Laminators in the action against Forest City. Although this Aetna representative and another Aetna claims adjuster were sufficiently persuaded by Laminators' argument so as to recommend to their superiors that Aetna defend Laminators under a "reservation of rights," Aetna's home office denied coverage and refused to provide Laminators' defense. Laminators filed a third-party complaint against Aetna to resolve the coverage dispute.
 
 
 11
 The district court granted Laminators' summary judgment motion against Aetna. In holding that Laminators was entitled to indemnification under the insurance policies for damages Laminators might become compelled to pay as a result of the litigation with Forest City, the court relied on Bowman Steel Corp. v. Lumbermens Mutual Casualty Co., 364 F.2d 246 (3rd Cir.1966). In Bowman, the court construed policies which were "very similar" to the policies at issue here, and the court held that an insurer was bound to indemnify a manufacturer which had been compelled to replace steel siding which had deteriorated after it had been installed. The district court noted that Bowman had been reaffirmed in a case involving amended forms like Aetna's. Home Insurance Co. v. H.M. Stauffer & Sons, Inc., No. 82-2001 (E.D.Pa. Dec. 22, 1982).
 
 
 12
 The district court also ordered Aetna to assume Laminators' defense or indemnify the panel manufacturer for its reasonable legal expenses. In a subsequent order, the district court clarified this aspect of its earlier opinion: the court ordered Aetna to pay Laminators $106,884.91, $15,542 of which was incurred by Laminators in obtaining the declaratory judgment against Aetna.
 
 
 13
 On appeal, Aetna challenges both aspects of the district court's decision: the court's holding that Aetna must indemnify Laminators for any damages it may owe to Forest City; and the court's order compelling it to pay the attorneys' fees incurred by Laminators in litigating the indemnification issue with Aetna and in preparing to litigate the underlying dispute with Forest City.
 
 
 14
 Aetna essentially advances three arguments in opposition to the indemnification holding. First, Aetna contends that a plain reading of the language of the two relevant exclusions, in conjunction with an understanding of the reason for including these provisions, clearly reveals that the policies do not cover the kind of property damage alleged to have been suffered by Forest City as a result of Laminators' allegedly-defective panels. Aetna argues that the alleged injury is precisely and exclusively the kind of damage which is caused by a factor within the insured's control and, therefore, is excluded by the "business risk" and "sistership" exclusions. Second, Aetna rejects the "authorities" relied on by the district court. Although Aetna does not dispute that Pennsylvania law applies, the insurer attempts to distinguish Bowman and rejects the argument that, because the panels have already been incorporated into building units, coverage exists under the policy despite the exclusionary provisions. Third, Aetna claims that the court's order requiring it to pay "any and all damages" for which Laminators may become liable was premature. The insurer argues that, if it is liable at all, it should only be obligated to indemnify Laminators for the amount of damages proven to have been suffered by Forest City to property other than the panels themselves; if the damage is confined to the panels, and their repair and replacement, then Aetna contends Laminators is not entitled to any indemnification.
 
 
 15
 Aetna also advances two arguments in opposition to the court's attorneys' fees order. First, Aetna claims that it has no duty to defend Laminators because, from the face of Forest City's complaint, it is clear that the alleged damage is not covered by the policies. Therefore, Aetna argues, it should not be compelled to reimburse Laminators for the costs incurred in defending the underlying action. Second, Aetna contends that it should not have to reimburse Laminators for the costs incurred in litigating this coverage dispute because it did not refuse to defend the underlying action in bad faith. At a minimum, Aetna argues, the district court should have conducted a hearing to determine whether the fees sought by Laminators were reasonable.
 
 
 16
 Laminators has three responses to Aetna's indemnification arguments. The panel manufacturer argues that Bowman and the other relevant cases clearly establish the rule that, under Pennsylvania law, where the item produced by the insured has been incorporated into another product such that the insured's product has lost its independent identity, the "business risk" exclusion no longer operates to preclude coverage for property damage. Laminators then contends that the "sistership" exclusion doesn't apply because the product has not been withdrawn from the market or from use "by the insured." Arcos Corp. v. American Mutual Liability Insurance Co., 350 F.Supp. 380, 385 (E.D.Pa.1972), aff'd mem., 485 F.2d 678 (3rd Cir.1973). Laminators maintains that the court's total indemnification holding was not premature because, in order for the parties to develop adequate settlement strategies, they must know in advance their respective potential liabilities.
 
 
 17
 In reply to Aetna's objections to the court's attorneys' fees order, Laminators also advances two arguments. First, the manufacturer argues that Aetna is obligated to pay the costs of defending the underlying litigation because Forest City's complaint stated a claim which potentially came within the scope of the policies' coverage. To substantiate this argument, Laminators emphasizes that the complaint alleged that Forest City would have to repair or replace all of the units "incorporating" the panels. Second, Laminators argues that Aetna's refusal to provide a defense was a decision made in bad faith, and, therefore, the court properly required Aetna to reimburse Laminators for the costs incurred in litigating the coverage issue. As evidence of Aetna's bad faith, Laminators cites the home office's decision to reject its adjusters' recommendation to defend the action under a "reservation of rights" letter. Moreover, Laminators argues, "where a claim potentially may become one which is within the scope of the policy, the insurance company's refusal to defend at the outset of the controversy is a decision it makes at its own peril." Cadwallader v. New Amsterdam Casualty Co., 396 Pa. 582, 589, 152 A.2d 484, 488 (1959). And Laminators maintains that there is no need to conduct a hearing to determine the reasonableness of the fees, especially since Aetna has only made a bald assertion that they were too high.
 
 
 18
 This appeal raises three distinct issues: (1) whether Aetna's policies provide indemnification coverage for the alleged damages; (2) whether the damages alleged in Forest City's complaint potentially stated a claim under the policies so as to obligate Aetna to provide Laminators' defense; and (3) whether Aetna's decision to deny coverage was made in bad faith so as to justify requiring Aetna to reimburse the costs incurred by Laminators in litigating the coverage issue.
 
 
 19
 Although no Pennsylvania state court has addressed the indemnification issue involved in this case, the Third Circuit has had several opportunities to apply Pennsylvania law to business risk exclusions under similar circumstances. In each of these cases, the Third Circuit found that, under Pennsylvania law, the business risk exclusion operates to require the insurer of a manufacturer whose product becomes defective after installation to pay for the cost of removing the defective product and installing a non-defective replacement product but not for the cost of manufacturing the replacement product itself. This interpretation is consistent with the exclusion's manifest purpose of preventing "an insured from collecting for damage sustained to its own product by virtue of the product's defectiveness." Puritan Insurance Co. v. Aldan Rubber Co., No. 86-2937, slip op. at 8-9 (E.D.Pa. Nov. 12, 1986), vacated, 829 F.2d 32 (3rd Cir.1987), decided on other grounds, slip op. (E.D.Pa. Feb. 10, 1988). At the same time, this interpretation of the exclusion does not relieve the insurer of its responsibility to pay for damage to the property of others caused by the insured's defective product.
 
 
 20
 In Pittsburgh Plate Glass Co. v. Fidelity and Casualty Co., 281 F.2d 538 (3rd Cir.1960), defective paint peeled off venetian blinds. The court held that, once the paint had been baked onto the steel and aluminum parts of the blinds, the paint lost its separate identity and had instead become part of the finished product. Id. at 541. Consequently, the insurer of the paint manufacturer was liable for the costs of removing the defective paint, repainting, and reinstalling the blinds. Id. at 539. The insurance policy, however, "did not apply to the paint itself," and, consequently, the insurer was under no obligation "to pay for defective paint or the costs of the replacement thereof." Id. at 540 n. 2. In Bowman Steel Corp. v. Lumbermens Mutual Casualty Co., 364 F.2d 246 (3d Cir.1966), steel siding became defective after it had been installed on several buildings. The court held that, because the siding had been installed, the insurer of the siding manufacturer was liable for expenses incurred in "removing and replacing the defective siding" but not for "the cost of manufacturing the new siding." Id. at 248. Finally, Pittsburgh Bridge and Iron Works v. Liberty Mutual Insurance Co., 444 F.2d 1286 (3d Cir.1971), involved a defective "saddle" installed on top of a tramway tower. The court held that the insurer of the saddle manufacturer was not liable for damages to the defective saddle itself but was liable for "damages for the rest of the tramway" caused by the defective saddle. Id. at 1290.
 
 
 21
 In light of these cases, we believe the district court erred in ordering Aetna to "indemnify Laminators for the damages it is compelled to pay as a result of this litigation." As the Third Circuit cases make clear, Aetna will not be liable for all damages Laminators may incur. Instead, Aetna can only be held liable for the costs of removing the defective Alum-A-Sote panels and the costs of installing new, non-defective panels; Aetna's business risk exclusion operates to exclude coverage for the cost of repairing the defective panels or of manufacturing new, non-defective panels to replace the defective Alum-A-Sote panels installed on the exterior of Forest City's housing units.
 
 
 22
 Aetna also argues that its sistership exclusion excludes coverage for even the cost of removing the defective panels and of reinstalling non-defective replacement panels. We believe that this argument is misplaced. The sistership clause was developed to protect insurers against liability for the cost of recalls. The clause's name, in fact, reflects this purpose. Following an accident involving a defective airplane, the airplane manufacturer became obligated to recall the airplane's sisterships in order to correct the common defect that caused the crash of the first airplane. Insurance companies subsequently developed the "sistership" clause to make clear that, while they intended to pay for damages caused by a product that failed, they did not intend to pay for the costs of recalling products containing a similar defect that had not yet failed. See Arcos Corp. v. American Mutual Liability Insurance Co., 350 F.Supp. 380, 384-385 (E.D.Pa.1972), aff'd mem., 485 F.2d 678 (3rd Cir.1973). The sistership clause recognizes that, following an accident caused by a product's defectiveness, the manufacturer of that product has a duty to take reasonable steps to prevent additional accidents from arising, but the clause specifies that the expense of such steps is not recoverable under the insurance policy. In interpreting the sistership clause in light of Pennsylvania law, the court in Arcos held that the "provision applies only if the product or property of which it is a part is 'withdrawn from the market or from use' by the insured." Id. at 385. Here, Laminators did not recall its Alum-A-Sote panels from the market. Consequently, the sistership clause does not release Aetna from its obligation to pay for the removal of the defective panels and installation of non-defective substitute panels.
 
 
 23
 Under clearly-established Pennsylvania law, an insurer has a duty to defend its insured against any claim that potentially may fall within the scope of the policy. Cadwallader v. New Amsterdam Casualty Co., 396 Pa. 582, 152 A.2d 484 (1959). Therefore, the insurer may be obligated to defend even though it is ultimately found to be under no obligation to indemnify. Gedeon v. State Farm Mutual Automobile Insurance Co., 410 Pa. 55, 188 A.2d 320 (1963). Because Forest City's complaint clearly alleged facts that could have supported a recovery under the policy, Aetna was obligated under the policy to defend Laminators. Consequently, the district court properly ordered Aetna to indemnify Laminators for the $91,342.91 spent in defense of Forest City's claim. Moreover, we find no error in the district court's failure to hold an evidentiary hearing with regard to the reasonableness of this figure. Laminators submitted a detailed statement of its legal fees and expenses; Aetna's conclusory assertion that "the fees seem excessive and appear to be unreasonable for what was necessarily required by the action" was legally insufficient to require the district court to hold a hearing.
 
 
 24
 We believe, however, that the award of $15,542 incurred by Laminators in the declaratory judgment action was improper. Under Pennsylvania law, "an insured who is compelled to bring a declaratory judgment action to establish his insurer's duty to defend an action brought by a third party may recover his attorneys' fees incurred in the declaratory judgment action if the insurer has, in bad faith, refused to defend the action brought by the third party." Kelmo Enterprises, Inc. v. Commercial Union Insurance Co., 285 Pa.Super. 13, 426 A.2d 680, 685 (1981). Although the district court did not specifically find that Aetna had acted in bad faith in refusing to defend Laminators, Laminators contends that Aetna's bad faith is manifest from its conduct. As particularly strong evidence of Aetna's bad faith, Laminators points to the April 1982 meeting at which Laminators' lawyers were able to persuade non-lawyer representatives from Aetna that Aetna was bound to defend Laminators in the action brought by Forest City. We find this evidence inconclusive. Moreover, other evidence, including Yarus' affidavit and the potential applicability of the business risk and sistership exclusions, suggests that Aetna's refusal to defend was not in bad faith. Therefore, in the absence of a finding by the district court that Aetna acted in bad faith and under the facts outlined in this case, we cannot agree that Laminators was entitled to recover the cost of litigating the declaratory judgment action. Cf. Montgomery Ward & Co., Inc. v. Pacific Indemnity Co., 557 F.2d 51 (3d Cir.1977) (award of attorneys' fees to insured for cost of declaratory judgment action against insurer affirmed where district court specifically found that insurer had acted in bad faith and this finding was well-supported in the record).
 
 
 25
 The judgment of the district court is affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion.
 
 
 
 *
 The Honorable Edward H. Johnstone, Chief United States District Judge for the Western District of Kentucky, sitting by designation